UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMON PROPERTY GROUP, INC., and )
SIMON PROPERTY ACQUISITION, INC., )
                                       )
      Plaintiffs, )
                                         )
vs. )    Case No.: 02-74799
                                         )    Honorable Victoria A. Roberts
TAUBMAN CENTERS, INC., ET AL, )
                                         )
      Defendants )
AND )
LIONEL Z. GLANCY, on behalf of himself )
and all others similarly situated, )
                                         )
      Plaintiffs, )
                                         )
vs. )    Case No.: 02-75120
                                         )    Honorable Victoria A. Roberts
ROBERT S. TAUBMAN, ET AL, )
                                         )
      Defendants. )
                                         )
_____ )

## NOTICE OF HEARING

To:       See Attached Certificate of Service

       PLEASE TAKE NOTICE that **GMIMCO's And GMPT's Motion to Intervene and Maintain Materials Under Seal** will be heard before the Honorable Victoria A. Roberts, U.S. District Court, Eastern District of Michigan, at a date and time to be set by the Court.

Dated: February 27, 2003

Respectfully submitted,

GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION, and
GMPTS LIMITED PARTNERSHIP

_____
One of Its Attorneys

Of counsel:
Chad J. Layton
Derek S. Witte

Matthew M. Neumeier (P41364)
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
Phone: (312) 222-9350
Fax: (312) 840-7749

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMON PROPERTY GROUP, INC., and )
SIMON PROPERTY ACQUISITION, INC., )
)
     Plaintiffs, )
)
vs. )     Case No.: 02-74799
)     Honorable Victoria A. Roberts
TAUBMAN CENTERS, INC., ET AL, )
)
     Defendants )
)
AND )
)
LIONEL Z. GLANCY, on behalf of himself )
and all others similarly situated, )
)
     Plaintiffs, )
)
vs. )     Case No.: 02-75120
)     Honorable Victoria A. Roberts
ROBERT S. TAUBMAN, ET AL, )
)
     Defendants. )
)
_____ )

## GMIMCO'S AND GMPT'S MOTION TO INTERVENE AND MAINTAIN MATERIALS UNDER SEAL

General Motors Investment Management Corporation ("GMIMCO") and GMPTS

Limited Partnership (collectively, "GMPT") state as follows in support of their Motion to

Intervene and Maintain Materials Under Seal:

In January 2003, GMPT, a non-party in the above captioned cases, voluntarily

produced numerous confidential and proprietary business documents in response to subpoenas

propounded by the Plaintiff Simon Property Group, Inc. ("Simon"). Simon induced GMPT to

produce these confidential documents by assuring GMPT that, in light of the existence of a

protective order entered by this Court, GMPT's documents would remain confidential such that GMPT's business competitors – including Simon – would not have access to the documents. In reliance on this Court's protective order, GMPT produced its confidential documents on an "attorneys' eyes only" basis.

Recently, the New York Times sought to modify the protective order to gain access to court documents, including confidential material produced by GMPT that was filed by Plaintiff Simon. Despite the fact that Simon is a business competitor of GMPT, and in disregard of the fact that Simon used the protective order to induce GMPT to produce its documents, Simon has not objected to the New York Times' request to unseal the court record. Simon even failed to provide GMPT with notice of the New York Times' motion to open sealed materials.

Accordingly, GMPT must be allowed to intervene in this matter. Pursuant to Federal Rule of Civil Procedure 24(b)(2), this Court should grant GMPT leave to file the instant motion and supporting brief so that GMPT can maintain the umbrella of protection currently afforded by the very protective order which the New York Times seeks to modify.

This Court should also maintain the seal under which the GMPT documents filed by Plaintiff Simon are protected. GMPT's right to protect its confidential trade secrets clearly outweighs any plausible right the New York Times may have to pre-trial discovery material produced by a non-party. The governmental interest in preventing abuse of the discovery system also weighs in favor of maintaining the court's protective order and seal. Finally, the fact that GMPT relied on this Court's protective order when voluntarily producing confidential commercial information further supports maintaining the protective seal over the GMPT materials.

WHEREFORE, for the reasons stated herein, General Motors Investment Management Corporation and its affiliate GMPTS Limited Partnership respectfully request that this Court enter an order (i) granting GMPT leave to intervene for the sole purpose of preserving the protective order and maintaining its confidential documents under seal; (ii) maintaining the existence and continuity of the protective order, at least insofar as it applies to GMPT's confidential documents; (iii) denying the New York Times' request to unseal the court record, at least insofar as it applies to GMPT's confidential documents; and (iv) providing for any other just relief.

Respectfully submitted,

GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION, and
GMPTS LIMITED PARTNERSHIP

One of Its Attorneys

Matthew M. Neumeier (P41364)
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
Phone: (312) 222-9350
Fax: (312) 840-7749

Of counsel:
Chad J. Layton
Derek S. Witte

## CERTIFICATE OF SERVICE

I, Chad J. Layton, an attorney, hereby certify that on this 27th day of February, 2003,

I caused a copy of the foregoing **Notice of Hearing, GMIMCO's And GMPT's Motion to**

**Intervene and Maintain Materials Under Seal** and **GMIMCO's And GMPT's Memorandum**

**In Support Of Motion To Intervene And Maintain Materials Under Seal** to be served on the

following counsel of record by placing copies of each document in an envelope and depositing same,

with proper postage prepaid, in the United States mail at 1 IBM Plaza Chicago, Illinois:

**Attorneys for Plaintiffs**

Carl H. von Ende (P21867)
Todd A. Holleman (P57699)
Miller, Canfield, Paddock & Stone
150 West Jefferson, Suite 2500
Detroit, MI 48226-4415
313-963-6420

Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019
212-728-8000

**Attorneys for Defendants**

Joseph Aviv (P30014)
Bruce L. Segal (P36703)
Matthew F. Leitman (P48999)
Miro Weiner & Kramer
38500 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48303-0908
248-258-1207

Steven G. Schulman
Seth Ottensoser
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
212-594-5300

**Attorneys for the New York Times**

Charles E. Barbieri (P31793)
Scott Lovernick (P63145)
Foster, Swift, Collins & Smith, P.C.
313 South Washington Square
Lansing, MI 48933
517-371-8155

Chad J. Layton

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMON PROPERTY GROUP, INC., and )
SIMON PROPERTY ACQUISITION, INC., )
)
    Plaintiffs, )
)
vs. )   Case No.: 02-74799
)   Honorable Victoria A. Roberts
TAUBMAN CENTERS, INC., ET AL, )
)
    Defendants )
)
AND )
)
LIONEL Z. GLANCY, on behalf of himself )
and all others similarly situated, )
)
    Plaintiffs, )
)
vs. )   Case No.: 02-75120
)   Honorable Victoria A. Roberts
ROBERT S. TAUBMAN, ET AL, )
)
    Defendants. )
)
_____ )

**GMIMCO'S AND GMPT'S MEMORANDUM IN SUPPORT OF**
**MOTION TO INTERVENE AND MAINTAIN MATERIALS UNDER SEAL**

Matthew M. Neumeier (P41364)
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350
Fax: (312) 840-7749

Of counsel:
Chad J. Layton
Derek S. Witte

## ISSUES PRESENTED

1.    Whether General Motors Investment Management Corporation and GMPTS Limited Partnership (collectively "GMPT") may intervene in this matter for the limited purpose of requesting this Court to preserve the existing Stipulated Protective Order and maintain the confidentiality of GMPT's materials filed by other parties in this action.

2.    Whether the Stipulated Protective Order entered by this Court on January 7, 2003 allowing confidential documents to be filed under seal was valid and based upon "good cause."

3.    Whether the confidential GMPT documents contained in the Appendix to Plaintiffs' Memorandum of Law in Support of its Motion for Preliminary Injunction should remain under seal pursuant to the Stipulated Protective Order.

i

## CONTROLLING AUTHORITY

1.  *In re Air Crash Disaster,* 130 F.R.D. 634 (E.D. Mich. 1989).

2.  *In re Consumers Power Co. Securities Litigation,* 109 F.R.D. 45 (E.D. Mich. 1985).

3.  *F.D.I.C. v. Ernst & Ernst,* 677 F.2d 230 (2nd Cir. 1982).

4.  Federal Rule of Civil Procedure 24(b)(2).

5.  Federal Rule of Civil Procedure 26(c).

6.  *In re The Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470 (6th Cir. 1983).

7.  *Meyer Goldberg, Inc. v. Fisher Foods, Inc.,* 823 F.2d 159 (6th Cir. 1987).

8.  *Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978).

9.  *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3rd Cir. 1994).

10. Restatement of Torts § 757 (1939).

11. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984).

12. *Tinman v. Blue Cross & Blue Shield of Michigan,* 176 F.Supp.2d 743 (E.D. Mich. 2001).

13. *Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27 (E.D. Mich. 1981).

14. *Witucki v. Couture,* 2002 WL 31748841 (E.D. Mich. 2002).

15. *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 529 F.Supp. 866 (E.D. Pa. 1981).

# INTRODUCTION

General Motors Investment Management Corporation ("GMIMCO") and GMPTS Limited Partnership (collectively, "GMPT"), by their counsel, Jenner & Block, LLC, hereby file this memorandum in support of their Motion to Intervene and Maintain Materials Under Seal, in opposition to the New York Times' (the "Intervenor") Motion to Intervene and Open Sealed Materials.

In reliance on assurances of confidentiality from Plaintiffs' counsel and a protective order entered by this Court, the GMPT entities (who are not parties to this litigation) voluntarily produced confidential business documents in January 2003 in response to two subpoenas issued at the request of Plaintiff Simon Property Group ("Simon") by the federal district courts for the Southern District of New York and the District of Massachusetts (the "Subpoenas"). Intervenor is now seeking to gain access to the numerous discovery documents filed by Simon along with its Memorandum of Law in Support of Simon Plaintiffs' Motion for a Preliminary Hearing (the "Simon Motion"), including GMPT's confidential and proprietary documents.

Despite the fact that Simon used the protective order to induce GMPT to produce its documents, Simon has not objected to the unsealing of the documents, nor did Simon notify GMPT of the Intervenor's recent efforts to unseal the court record. Instead, GMPT's counsel learned of this attempt to unseal its confidential documents by happenstance after reading, in *The New York Times*, a quotation of some scribbled notes jotted down on one of its documents – which was produced on an "attorneys' eyes only" basis. GMPT should be afforded the opportunity to protect its confidential and proprietary commercial information from disclosure to its competitors, one of which is Simon, as well as the public at large.

1

There is no question that this Court had good cause to enter its protective order, and that the order remains valid and in force today. While the parties to the litigation have not questioned the continuity of the protective order, Intervenor seeks to overturn the protective order in its entirety, which would permit parties such as Plaintiffs to disclose the many hundreds of pages of confidential GMPT documents properly marked "attorneys' eyes only" – the vast majority of which are not even part of the judicial record – to their own employees (who are competitors of GMPT) as well as the general public. GMPT's interest in protecting its confidential and proprietary commercial information, as well as the governmental interest in preventing abuse of the discovery system, outweigh any interests of Intervenor to have access to GMPT's confidential documents. Moreover, the fact that GMPT relied on the existence and validity of the protective order in producing its documents further compels rejection of Intervenor's request.

By way of this motion, GMPT requests that this Court (i) maintain the protective order it previously entered, and (ii) continue to maintain the sealed status of the specific confidential . GMPT documents that Simon filed in its Appendix to its motion for a preliminary injunction. GMPT is not interested in restricting Intervenor's' ability to obtain any other court documents.

## BACKGROUND

In 1992, Taubman Centers, Inc. ("TCI"), a real estate investment trust, became a public company. At the time, GMPT held approximately 20% of the outstanding shares of TCI common stock. (Simon Motion, Ex. A, p. 3.) TCI operates its regional shopping center through a partnership called the Taubman Realty Group Limited Partnership ("TRG"). GMPT also held a significant ownership interest in the partnership units in TRG. *Id.*

As of August 1998, a 13 member Partnership Committee controlled TRG. The members of this committee included the Taubman family, as well as representatives of GMPT and

2

TCI. A 10 member Board of Directors governed TCI, including representatives of the Taubman family, representatives of GMPT, and several independent directors. *Id.*

In 1998, the structure of TCI and TRG underwent significant changes in connection with what has been described in this action as the "GMPT Exchange." Pursuant to this transaction, GMPT exchanged its partnership units in TRG for 10 retail mall properties. (Simon Motion, Ex. A, p. 8). At the same time, TCI issued shares of a new Series B Preferred Stock to certain other holders of partnership units in TRG. Plaintiffs' Complaint alleges, *inter alia*, that the issuance of this stock to the Taubman family was improper. (Simon Motion, Ex. A, pg.s 8-9). Based on the Complaint, Plaintiffs do not, however, challenge the validity or propriety of the GMPT Exchange transaction or the conduct of GM's representatives on the TCI Board or TRG Partnership Committee.[1]

In 2002, Plaintiffs expressed an interest in purchasing TCI and ultimately commenced what is commonly referred to as a hostile tender offer for the purchase of TCI's outstanding shares. (Simon Motion, Ex. A, pg. 14). Plaintiffs thereafter filed this action against parties other than GMPT.

In January 2003, the Court entered a stipulated protective order to govern discovery that is similar to protective orders routinely entered in complex litigation of this type. The protective order expressly governs "the handling of documents, . . . and any other information produced, given or exchanged by any party or **non-party** to the Litigation . . . to any other person . . . in connection with discovery." (Protective Order, Ex. B, p. 2 (emphasis added)). The protective order restricts the use of "non-public, confidential, proprietary, personal or commercially sensitive information" and

---

[1]  As Plaintiff Simon notes, GMPT' representatives on the TCI Board and TRG Partnership Committee had to abstain from voting on the GMPT Exchange (Simon Motion, Ex. A, p. 9), because they were "interested parties" in this transaction under Michigan law and thus subject to a direct and obvious conflict of interest.

3

restricts the use of such documents solely to the Litigation. (Protective Order, Ex. B, pg.s 2-3). The protective order precludes the parties themselves from reviewing documents that have been marked as "restricted confidential," as such documents are essentially for attorney's eyes only. (Protective Order, Ex. B, pg. 6).

In connection with this action, Plaintiffs served two subpoenas on the GMPT entities that were issued by the federal district courts for the Southern District of New York and the District of Massachusetts, where GMIMCO and GMPTS Limited Partnership are located. (*See* Exhibit C). Plaintiffs sought the production of documents related to the GMPT Exchange as well as the issuance of the Series B preferred stock. *Id.* At the time of receipt, GMPT, through its counsel, raised numerous objections to the propriety and scope of the Subpoenas, including the fact that they called for production of confidential and proprietary commercial information to a recognized competitor in the shopping center business. (*See* Exhibit D.) GMPT made clear that it would not produce such confidential documents "in the absence of a protective order that severely restricts access to these documents," and requested a copy of any such protective order that may have been entered. *Id.*

Nonetheless, the GMPT entities ultimately agreed, voluntarily, to produce numerous responsive documents – on an expedited basis and at significant expense to GMPT – but only after receiving written and oral assurances from Simon's counsel that documents containing GMPT's confidential information would be disclosed only on an "attorneys' eyes only" basis, and not shared with either Plaintiffs' or Defendants' employees, and that any such documents filed with this Court would be filed and maintained under seal. In that regard, GMPT was provided with a copy of the stipulated protective order that was submitted to and subsequently entered by this Court. (*See* Exhibit E, noting that "[y]ou are welcome to sign on to [the protective] order and designate documents for protection according to its terms".) GMPT produced its confidential documents under

4

the protective order's designation "restricted confidential" because both the Plaintiff Simon Property Group and the Defendant TCI are competitors in the retail mall business. In the absence of such assurances and a protective order evidencing this Court's willingness to protect GMPT's confidential documents from public disclosure to its competitors, the GMPT entities would have continued to object to the Subpoenas and not voluntarily produced these documents absent orders by the federal district courts for the Southern District of New York and the District of Massachusetts.

Recently, despite the existence of the protective order, and without any notice to GMPT by either of the parties, Intervenor moved to intervene and request this Court to unseal the court record, including the Appendix filed by Plaintiff Simon with its preliminary injunction motion, which includes at least one confidential GMPT document. This Court has already unsealed Plaintiff Simon's memorandum *sua sponte*, which quoted two brief notes consisting of 10 words total from this GMPT document. (Simon Motion, Ex. A, p. 9 (quoting A854, 859)). GMPT has filed the instant motion solely to preserve its rights under the protective order and to maintain the confidentiality of its proprietary commercial information.

## ARGUMENT

**I. GMPT Is Entitled To Intervene To Preserve The Confidentiality Of Its Documents.**

GMPT seeks to intervene in this matter for the limited purpose of preserving the standing protective order and responding to Intervenor's motion. Federal Rule of Civil Procedure 24(b)(2) requires a non-party seeking permissive intervention in an action to establish a common question of law or fact between its own claim and the main action. However, a non-party seeking limited permissive intervention for discovery purposes need not present "a strong nexus of common fact and law" to satisfy the requirements of the rule. *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 163-64 (6th Cir. 1987); *Kerasotes Mich. Theatres, Inc. v. National Amusements,*

*Inc.,* 139 F.R.D. 102, 103 (E.D. Mich. 1991). In fact, permissive intervention enables a non-party to the litigation to modify protective orders in that action. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778 (3d. Cir. 1994); and *Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 293-94 (2d Cir. 1979). Additionally, no independent basis of jurisdiction over the non-party is required, because the trial court "already has . . . the power to modify the protective order." *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 473 (9th Cir. 1992). *Accord Pansy,* 23 F.3d at 778 n. 3.

Here, GMPT must be granted leave to intervene. Intervenor is seeking to gain access to discovery documents, including confidential and proprietary documents produced by GMPT. GMPT is seeking to protect its confidential commercial information from disclosure, pursuant to the protective order, consistent with Federal Rule of Civil Procedure 26(c). Thus, the common issues of fact and law regarding the validity and scope of the protective order, and the propriety of the Court's sealing of these documents, justify GMPT's intervention.

GMPT is not seeking to litigate any of the underlying merits of this case, in which it is not a party. Rather, GMPT seeks only to preserve and maintain the protective order already entered in this matter. Because permissive intervention is the appropriate procedural mechanism for non-party challenges to protective orders, GMPT must be allowed to enter into this matter to protect its confidential and proprietary commercial information from disclosure.

GMPT plainly cannot rely on the parties to the litigation to protect its interests here. Plaintiff Simon – the very party that induced GMPT to produce its documents on the understanding that the protective order was in force and would be enforced by this Court – has not objected to Intervenor's request, and even failed to provide GMPT with notice of Intervenor's intentions here. Nor have Defendants sought to protect GMPT's interests. It is not surprising that GMPT cannot rely

6

on its business competitors to protect its confidential information.  Only GMPT is capable of providing the Court with the information necessary to justify maintenance of the protective order for GMPT's documents.  GMPT seeks that protection, regardless whether the parties themselves wish to release all of their own documents to the public at large.

## II.    Intervenor, And Not GMPT, Must Sustain The Burden Of Proof.

In the Sixth Circuit, the party seeking to modify a protective order that has been entered by the court shoulders the burden of proof.[2]  *See Meyer Goldberg, Inc. v. Fisher Foods*, 823 F.2d 159, 163 (6th Cir. 1987) (if an alternative solution that protects "legitimate secrecy interests" cannot be found, then "the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted"); and *In re Air Crash Disaster*, 130 F.R.D. 634, 638 (E.D. Mich. 1989) ("the burden is upon the party, who seeks a modification of a protective order, to show sufficient cause to justify the request").  Because it is Intervenor who seeks to modify the order, Intervenor must establish why the protective order should be modified.  But even if the burden belonged to GMPT, GMPT's interests in maintaining the confidentiality of its documents clearly outweigh any plausible interests of Intervenor in the circumstances presented here.

## III.   The Combined Interests Of Protecting Confidential Business Documents And Preserving The Integrity Of The Discovery System Outweigh Intervenor's Right To Access Confidential Documents Of A Non-Party To The Litigation.

Here, the significant interest that the government has in protecting the integrity of the discovery system and GMPT's right to protect its confidential commercial information each separately outweighs Intervenor's right to access to GMPT's discovery materials.  And the combined

---

[2]

While Intervenor suggests the contrary, it mistakenly relies on a Third Circuit case, *Leucadia v. Applied Extrusive Technologies, Inc.*, 998 F.2d 157, 165-66 (3d. Cir. 1993), which conflicts with Sixth Circuit precedent and is therefore not controlling.

effect of these interests clearly trumps any rights of Intervenor, such that this Court's protective order is solidly grounded and should be maintained.

     **A.**    **The governmental interests outweigh Intervenor's rights.**

          **1.**    <u>**Application of the relevant legal standard compels maintaining the protective order.**</u>

It is rare that discovery is a public process, and even at common law, discovery proceedings were not open to the public. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 33 (1984). Information produced during pretrial discovery may be "unrelated, or only tangentially related," to the subject lawsuit. *Id.* Accordingly, an order precluding the publication of discovered material prior to trial does not effectuate a level of restraint requiring "exacting First Amendment scrutiny." *Id.* The relevant questions are (i) whether the practice at issue promotes "an important or substantial governmental interest unrelated to the suppression of expression," and (ii) whether the restraint is "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 32. *See also In re Consumers Power Co. Sec. Litig.,* 109 F.R.D. 45, 52 (E.D. Mich. 1985) (applying *Seattle Times'* test to deny newspaper's request to modify stipulated protective order).

The substantial governmental interest served by a protective order is to enable litigants to obtain information to prepare for trial. *Id.* at 34. The purpose of a protective order is not to suppress expression, but rather to protect against abuse of discovery. *Id.* at 34-35. For example, a protective order can prevent the unnecessary disclosure of private information. *Id.* The government has a substantial interest in preventing such abuse. *Id.* at 35.

In *Seattle Times*, the Supreme Court cited *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 529 F.Supp. 866 (E.D. Pa. 1981), for the proposition that heightened judicial scrutiny for an "umbrella" protective order like the one entered in this case would result in burdensome evidentiary

8

hearings and possible delays of interlocutory appeals. *Id.* at 36 n. 23. In *Zenith Radio,* the court explained that protective orders are designed to "facilitate the communication of information" between parties. The *Zenith Radio* court noted that several governmental interests support the entry of protective orders: (i) the court must protect against abuse of the discovery process and "preserve the integrity of the discovery system;" (ii) a court must be able to effectively manage complex litigation; and (iii) a court has a general responsibility "to do justice." *Id.* at 911-12. A protective order is an effective method against preventing unwarranted disclosure of confidential commercial information. *Id.* at 915. Moreover, a blanket "umbrella" protective order is not an unnecessary restraint where such an order is needed to address the management concerns involved in a complex case. *Id.*[3]

The Eastern District of Michigan has previously held that a stipulated protective order governing discovery documents did not violate the First Amendment. *Consumers Power*, 109 F.R.D. at 55. In *Consumers Power,* a newspaper sought to intervene into a lawsuit to remove a protective order entered by the court pursuant to stipulation. *Id.* at 46. The Court acknowledged that public access to judicial material serves an important functional goal of society, but also recognized that the functional needs of the court system outweighed the general needs of society. *Id.* at 54. As the Court explained:

> Our judicial system is dependent on the lengthy and difficult tasks of pretrial fact investigation. Only effective operation of pretrial discovery procedures will foster a full development of facts to inform both the courts and the public. Yet, litigation and the discovery rights

---

[3]     *See also* Annotated Manual for Complex Litigation Third, Section 21.432, at 78 & 79 n.146 (2002) (explaining the advantages of umbrella protective orders, noting that "[w]hen the volume of potentially protected materials is large, an umbrella order will expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication," and that protective orders are useful to prohibit disclosure of a document to a client if "the information has commercial value and the parties are competitors")

> that accompany it are not intended as surrogates for freedom of information or sunshine laws. Were they so, they would constantly be resisted by parties out of fear of abuse by opponents or exploitation by competitors. The court's discovery rules are intended not to restrict free expression but to enhance access to information for the purpose of judicial decision making. Safeguards against abuse of discovery or against inefficient resistence to open access and party cooperation are necessary to make the rules of discovery work.

> The goal of our system of discovery is to maximize voluntary compliance and minimize the coercive intrusions of the court and the expensive transaction costs which that entails. It is believed that certain time, place and manner restrictions to protect the litigants, as well as targeted protections of established privacy and proprietary interests, will foster the workings of discovery. While such protections may delay or restrict altogether public access to certain information, protective orders can serve the public goals for which the discovery rules compel disclosure of information in the first place -- the development of complete, relevant and reliable data on matters in litigation for a more "just, speedy, and inexpensive determination of every action" whether by private agreement or public trial.

*Id.* at 55. The Court further explained that protective orders facilitate the efficient administration of courts by promoting cooperation among parties during discovery, and limiting the expense and inefficiency of engaging the court to resolve minor controversies regarding discovery. *Id.* In *Consumers Power,* these goals compelled maintenance of the protective order for reasons unrelated to the suppression of expression. *Id.*

The protective order in this case furthers the exact same governmental interests discussed in *Seattle Times*, *Zenith Radio*, and *Consumers Power*. But for the protective order, GMPT would have been unwilling to produce its documents, and certainly would have sought court intervention for the entry of a protective order by the other courts having subpoena jurisdiction over the two GMPT entities. This Court's protective order facilitated voluntary disclosure of GMPT's confidential business documents. In this case, the protective order clearly promoted the interest of cooperation in the discovery process. That order also allowed GMPT to produce its documents

10

without fear that parties or non-parties would improperly have access to or use its documents, or that competitors such as Plaintiff Simon would gain an unfair advantage from the documents.

The protective order also enhanced efficiency, as the parties were able to avoid unnecessary litigation that would have occurred but for the protective order. GMPT's voluntary production of the documents – on an expedited basis – also assisted this Court in smoothly managing the subject lawsuit. This is especially true because the subpoenas to which the GMPT entities responded were not issued by this jurisdiction, and this Court otherwise had no power to compel GMPT to produce its documents. The purpose of the protective order was obviously to facilitate the production of discovery documents, and not to unnecessarily suppress expression.

Finally, the protective order provided no greater restriction than was necessary to protect the interests described above. A court is authorized to enter a blanket protective order to address the management concerns of a lawsuit. *See Zenith Radio, supra.* Had the protective order been less restrictive here, GMPT would not have voluntarily produced its documents, thereby creating the very concerns which the protective order was designed to address.

### 2.    The First Amendment standard used in criminal cases does not apply.

At issue here is whether Intervenor is entitled to have unrestricted access to confidential commercial information produced by GMPT during the discovery phase of a civil case. Intervenor attempts to justify its alleged "right" to these documents by relying on cases that discuss public access to hearings in *criminal* matters. Intervenor's argument fails, however, because the case at bar is not at trial and this is obviously not a criminal case. No one has prevented Intervenor from attending hearings in this case – evidentiary or otherwise.

Intervenor's cases only address the narrow issue of the First Amendment right of access to the trial of a criminal matter. *See Press-Enterprise Co. v. Super. Ct. of Cal. for the Co. of*

11

*Riverside*, 478 U.S. 1, 13 (1986) (*Press-Enterprise II*); *Globe Newspaper Co. v. Superior Court for the Co. of Norfolk*, 457 U.S. 596, 605 (1982); *United States v. Doe*, 63 F.3d 121 (2d Cir. 1995); *In re Memphis Publishing Co.*, 887 F.2d 646, 648 (6th Cir. 1989). These cases rely on the proposition that "the criminal trial historically has been open to the press and general public . . . both here and in England." *Globe Newspaper*, 457 U.S. at 605. *See also Press-Enterprise II*, 478 U.S. at 8. A discussion of the constitutional analysis of a trial court's decision to close its court room to the public during criminal proceedings is a far cry from analyzing the constitutionality of a protective order sealing discovery documents attached to a motion for preliminary injunction in a civil proceeding. Consequently, Intervenor's cases are not on point because the standard applied in a criminal matter is inapposite here.

Moreover, as discussed in *Seattle Times*, the public does not have the same rights of access to pre-trial, civil discovery material as it does to a trial itself. GMPT is not attempting to foreclose the public's right to attend any trial of this matter, should this case be tried, or any evidentiary hearing. GMPT is merely seeking to reinforce the validity of a routine protective order entered pursuant to Federal Rule of Civil Procedure 26(c). The Court should decline Intervenor's invitation to apply a legal standard that does not fit this case.

The fact that these documents were filed in connection with a preliminary injunction hearing also supports application of a lesser standard of review of the protective order and this Court's sealing of the Appendix. By definition, any ruling on a preliminary injunction motion is not a dispositive ruling on the merits that might give rise to a greater interest in public access to the complete and unredacted underlying record. In addition, based on the Court's prior *sua sponte* ruling granting Intervenor access to Plaintiff Simon's memorandum, Intervenor has already learned the entire content of the two brief notes, consisting of only 10 words, that are quoted from GMPT's

12

confidential document. There is no basis to produce the other 18 pages of that document, and particularly not the many handwritten notes set forth on numerous pages thereof that are unrelated to this quote or any other issues raised in the Complaint.

**B.      GMPT's right to protect confidential business information outweighs Intervenor's interests in GMPT' documents.**

Pursuant to Federal Rule of Civil Procedure 26(c)(7), a court has the power to enter an order to protect against the disclosure of trade secrets, as well as confidential commercial information. The Sixth Circuit recognizes that a district court can exercise its supervisory power over the court records and filings. *In re The Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470, 473 (6th Cir. 1983). A court can exercise this power to seal its records if privacy interests outweigh the public's traditional right of access to judicial material. *Id.* at 474. A court can even protect the privacy rights of third parties not involved in the underlying litigation. *Id.* at 477. Moreover, a court can refuse access where court files may become "a vehicle for improper purposes." *Id.* at 474. In fact, "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Id.* (*quoting Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598 (1978)).

This court has the authority to limit public access to court documents. *Witucki v. Couture,* 2002 WL 31748841, *1 (E.D. Mich. 2002). In order for a confidential document to remain under seal, the court must only be satisfied that disclosure would cause "serious competitive or financial harm." *Id.* at *2. The movant must proffer a "particularized showing" that the document is confidential. *Tinman v Blue Cross & Blue Shield of Michigan,* 176 F.Supp.2d 743, 745 (E.D. Mich. 2001).

Here, GMPT's position that the subject documents are confidential and contain proprietary commercial information is made in good faith, and is not designed to thwart the public.

13

Under Rule 26(c)(7), GMPT is entitled to have its confidential information protected against unwarranted disclosure. Moreover, GMPT is able to demonstrate that the disclosure of its documents filed by Plaintiff Simon will result in serious competitive harm.

GMPT's documents generally pertain to the GMPT Exchange in which GMPT acquired 10 mall properties. These documents contain confidential and proprietary commercial information – including business analyses, financial information, and comments, advice and recommendations of GMPT's representatives and advisors – related to GMPT's significant financial investment at the time in TCI common stock and partnership interests in TRG. The GMPT Exchange involved an arms-length transaction between GMPT and TRG. (*See* Affidavit of W. Allen Reed, Ex. F, ¶ 2.)

In particular, these documents include confidential advice and recommendations of GMPT's representatives and advisors with respect to the proposed GMPT Exchange, which involved the acquisition of 10 shopping center properties from TRG in exchange for GMPT's partnership interests in TRG, as well as business strategies for operating those properties after the closing of the proposed transaction.[4]

---

[4] Among these documents are drafts of proposed terms and conditions for the transaction that were commented upon at length by GMPT's representatives and advisors for purposes of GMPT's internal analyses (which is performed in connection with its obligation to properly manage pension trust-related investments) and its negotiations with TRG. These analyses and recommendations are not known by others outside of GMPT and its advisors and were generated at great expense by GMPT's officers, employees, representatives and advisors. The documents generally contain information concerning GMPT's business and financial strategies, and the thought processes of its representatives and advisors, which, if disclosed to competitors in the shopping center business such as Plaintiff Simon, could harm GMPT's long-term financial interests, as well as discourage GMPT's representatives and advisors from providing full and frank expressions of their views on significant investment decisions made on behalf of these pension trusts in the future out of concern that such confidential professional advice and counseling will be disclosed to either competitors or the public at large. (*See* Affidavit of W. Allen Reed, Ex. F, ¶ 3.)

14

The only specific document at issue for Intervenor's motion to unseal the record clearly contains confidential information. This document, which appears to be referenced in SPG Plaintiff's Appendix Volume II, at A854, consists of a draft term sheet for the proposed GMPT Exchange which is heavily marked with comments reflecting the initial impressions and professional advice of a GMPT advisor who was a representative of GMPT on the TRG Partnership Committee. The reference to this several page document in SPG Plaintiff's memorandum (at page 10) consists of the quotation, without elaboration or context, of two jotted handwritten notes consisting of a mere 10 words. The remaining comments, which cover a wide range of issues raised by the term sheet, have not to our knowledge been disclosed or raised in any pleading or motion filed with the Court, and therefore remain confidential and should be protected by this Court from further disclosure.

GMPT considers these documents to be confidential and proprietary commercial information. GMPT has not permitted access to these materials other than to a limited group of key representatives and advisors who were serving as GMPT's representatives on the TCI Board and the TRG Partnership Committee, and legal counsel. As a matter of practice, GMPT does not permit access to its pension trust investment and transaction-related materials such as these other than on a "need to know basis," and as necessary to securely maintain these documents in the usual course of business. (*See* Affidavit of W. Allen Reed, Ex. F, ¶ 4.)

The Plaintiff Simon Property Group and the Defendant Taubman Centers, Inc. are both managers of retail malls, and therefore competitors. Clearly, GMPT has a right to protect business analyses and recommendations from the prying eyes of its competitors. The protective order itself recognizes GMPT's right to protection because pursuant to that order, documents designated as "restricted confidential" are essentially for attorneys' eyes only, and not available for review by the parties themselves. (Protective Order, Ex. B, pg. 6.)

15

But for this litigation and the subpoenas served on the GMPT entities, GMPT would not have made its documents available to any competitors, let alone the public at large, and, therefore, the documents should not be permitted to be acquired by others. Moreover, unlike the parties in this case, there is no suggestion by Intervenor that GMPT has in any manner injected itself into the public debate over Plaintiffs' hostile takeover battle. GMPT has not issued press releases taking sides in this dispute. Nor is there any allegation that GMPT or its representatives engaged in any wrongful conduct in connection with the GMPT Exchange or other matters involving TCI or TRG.[5]

In light of the high level of confidentiality of these documents, this Court should maintain the protective order and sustain the sealing of GMPT's document, regardless whether the parties chose not to oppose the unsealing of their own documents.

## IV.    GMPT Relied On The Protective order.

In *In re The Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 473 (6th Cir. 1983), the plaintiff bank filed suit against the FDIC to protect the bank's business interests. Upon the filing of the case, the court granted a protective order sealing the entire court record. *Id.* at 472. The bank placed "significant reliance" on the court's protective order. *Id.* at 478. The Sixth Circuit refused to grant public access to certain private bank documents, explaining that once the bank relied on the protective order, only a "compelling need" or "extraordinary circumstances" would justify the reversal of the protective order. *Id. (citing F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230, 232 (2nd Cir.

---

[5]    Intervenor's contention that consumers would also somehow be impacted by this litigation – because they shop at retail malls owned by the parties – lacks any basis in fact or law. There is nothing to suggest that if Simon wins its battle with TCI, this will lead to lower prices for consumers at the malls now owned by TRG, or have any other plausible financial impact on consumers.

16

1982) (court can only modify a confidentiality order that has been entered and relied on if their exists a "compelling need" or "extraordinary circumstance."))

In *Consumers Power*, the parties' reliance on a protective order governing discovery similarly was among the reasons supporting the court's decision to deny a newspaper's request to modify the protective order. *See* 109 F.R.D. at 55 (E.D.Mich. 1985). In reliance on the protective order, the defendant provided plaintiffs with immediate and unrestricted access to its documents. *Id.* The defendant, in responding to the newspaper's attempt to gain access to the documents, explained that but for the protective order, they would not have voluntarily provided uninhibited access to their documents. *Id.* The court noted that the parties relied on the order to protect against undue disclosure of proprietary information. *Id.*

As in *Consumers Power*, GMPT relied on the protective order in making its confidential documents available for review in this litigation. (*See* Affidavit of W. Allen Reed, Ex. F, at ¶ 6.) Clearly, GMPT placed significant reliance on this Court's protective order. Were it not for this protective order, GMPT would have resisted producing its confidential documents absent court orders by the two other federal district courts having jurisdiction over the subpoenas that were issued.

GMPT's reliance on the protective order is yet another reason why this Court must deny Intervenor's requested relief. In sum, Intervenor cannot demonstrate an extraordinary circumstance that would justify compelling GMPT to reveal its confidential documents. The protective order should stand, and GMPT should be allowed to maintain the seal placed on its document filed with Plaintiff Simon's memorandum. Even if the other parties are willing to permit unrestricted access to their documents, this Court can narrowly tailor its relief to limit its sealing to GMPT's document only. This would reasonably protect a non-party that to date has cooperated

17

voluntarily in the discovery process, despite not having any other role in this dispute. In contrast, the relief that Intervenor seeks – and which Plaintiff Simon does not oppose – would essentially void the protective order and permit the wholesale distribution of *all* GMPT's confidential documents to Plaintiff's own employees and non-parties such as Intervenor.

WHEREFORE, for the reasons stated herein, GMPT Limited Partnership and GMPTS Limited Partnership respectfully request that this Court enter an order (i) permitting GMPT to intervene in this matter, (ii) denying the New York Times request to unseal the court record, at least with respect to GMPT's document; (iii) maintaining the existence and continuity of the protective order, at least as it applies to GMPT's confidential documents; and (iv) providing for any other just relief.

Respectfully submitted,

GMPT LIMITED PARTNERSHIP AND
GMPTS LIMITED PARTNERSHIP

One of Its Attorneys

Of counsel:
Chad J. Layton
Derek S. Witte

Matthew M. Neumeier (P41364)
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350
Fax: (312) 840-7749

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED