**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

SIMON PROPERTY GROUP, INC., et al.,

       Plaintiffs,

                                  Honorable: Victoria A. Roberts
vs.                                Case No. 02-74799


TAUBMAN CENTERS, INC., et al.,

       Defendants.

       and

LIONEL Z. GLANCY,

       Plaintiff,

vs.                                Case No. 02-75120


ROBERT S. TAUBMAN, et al.,

       Defendants.

_____/

## <u>ORDER</u>

### I.    INTRODUCTION

    This matter is before the Court on New York Times Company, Detroit Free

Press, Inc., and Dow Jones & Company, Inc.'s (collectively "New York Times") Motion

to Intervene and to Open Sealed Materials.  In opposition, General Motors Investment

Management Corporation (GMIMCO) and General Motors Limited Partnership (GMPT)

also filed a Motion to Intervene and Maintain Materials Under Seal.

1

For the reasons set forth below, both parties' motions will be GRANTED IN PART and DENIED IN PART.

II.   **BACKGROUND**

New York Times moves to intervene for the limited purpose of contesting this Court's entry of a stipulated protective order which gives the parties the discretion to file documents that the parties deem confidential under seal.[1]  Specifically, the New York Times asks the Court to 1) unseal the Motions for Preliminary Injunction and responsive pleadings; and 2) issue an order precluding the parties from filing future judicial documents under seal.

Since New York Times filed its motion, the Court entered an Order (on February 20, 2003) unsealing the briefs.  The Order also directed the parties to file responses to New York Times' motion with regard to the attached exhibits.  The parties have since advised the Court that they have no objection to releasing the exhibits, with the exception of certain third-party documents identified by Defendant Taubman Centers, Inc.  (TCI), which were received as confidential documents.  The parties advise that all of the identified third parties have authorized the release of their documents, except for GMIMCO and GMPT (collectively "GMPT").

The GMPT document at issue was attached as exhibit A854-860 by the Simon Plaintiffs.[2]  The document was given to Plaintiffs in response to a subpoena and was

---

[1]A Stipulation and Order Governing the Production and Exchange of Confidential Material was entered on January 6, 2003.

[2]Two sets of GMPT documents were actually attached by Plaintiffs.  However, GMPT states that the second set, A775-844, has already been released.  It is not clear how or by whom the document was released.

designated by GMPT as "restricted confidential," per the stipulated protective order.[3]
Handwritten comments on page A859 were, nevertheless, quoted in the body of the
briefs and, therefore, have already been made public. GMPT objects to further release
of the document asserting that it contains confidential and proprietary commercial
information.

The GMPT document is dated June 29, 1998 and addresses various aspects of
GMPT's negotiations to withdraw from its partnership with TCI. GMPT asserts that its
document contains "confidential advice and recommendations of GMPT representatives
and advisors with respect to the proposed [withdrawal] . . . as well as business
strategies for operating those properties after the closing of the proposed transaction."
GMPT Br. at p14. Consequently, GMPT asserts that, if the information contained in its
document is disclosed to its competitors in the shopping center business, its long-term
financial interests could be harmed and its advisors/representatives would be
discouraged from providing full and frank expressions of their views on future
investment decisions.

Both New York Times and the Simon Plaintiffs assert that the information
contained in the GMPT document is stale and that GMPT has failed to show how
disclosure of the remainder of the document would cause significant harm to its
competitive or financial position. Defendants object to a blanket order precluding future
filings under seal.

---

[3]The protective order provides that documents designated "restricted
confidential" may only be disclosed to counsel, experts/consultants, the Court and the
Court Reporter. The parties themselves are not permitted to view "restricted
confidential" documents, except by court order or stipulation.

3

## III.   APPLICABLE LAW AND ANALYSIS

### A.   Motions to Intervene

New York Times and GMPT move to intervene pursuant to Fed. R. Civ. P. 24(b)(2), which governs permissive interventions and states:

> Upon timely application anyone may be permitted to intervene in an action: . . . when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2). "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000)(quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir.1991)).

A motion to intervene brought under 24(b)(2) must be timely and have at least one common question of law or fact. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). The trial court must then consider whether intervention would cause undue delay or prejudice to the original parties. Id.

Here, there is no dispute regarding whether New York Times or GMPT meets the requirements of 24(b)(2). The Court further finds that an intervention for the limited purposes asserted by New York Times or GMPT will not result in undue delay or prejudice to the original parties. Therefore, the Court will grant New York Times and GMPT's limited motions to intervene.

4

### B.    Sealed Documents

The Court now turns to the issues raised by New York Times and GMPT.  New York Times requests that the Court: 1) unseal the Motions for Preliminary Injunction and responsive pleadings; and 2) issue an order precluding the parties from filing future judicial documents under seal.  GMPT only opposes the New York Times' motion as it pertains to a GMPT document that was attached as an exhibit to the Simon Plaintiffs' Motion for Preliminary Injunction.

A "long-established legal tradition is the presumptive right of the public to inspect and copy judicial documents and files." *In re Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470, 474 (6th Cir. 1983)(citing *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978)).  This presumptive right, however, is not absolute.  A court may seal records when "interests of privacy outweigh the public's right to know." Id.  "[T]he 'privacy rights of participants and third parties' are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." Id at 478 (quoting *Brown & Williamson Tobacco Corp v Federal Trade Commission,* 710 F.3d 1165, 1179 (6th Cir. 1983)).

The presumption in favor of public access is not the appropriate standard to apply where a party seeks access to a document already (and properly) filed with the court under seal.  The party seeking disclosure "'must instead make a specific showing of need for access to the documents.'" *US v Certain Real Property Located in Romulus, Wayne County, Michigan*, 977 F.Supp. 833, 836 (E.D. Mich. 1997).  In *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir.1989), the Seventh Circuit, likewise, held that the

presumption does not apply to documents properly submitted under seal but stated that:

> Of course, the public's right to inspect judicial documents may not be evaded by the wholesale sealing of court papers. Instead, the district court must be sensitive to the rights of the public in determining whether any particular document, or class of documents, is appropriately filed under seal.

Citing *Certain Real Property* and *Corbitt*, the Ninth Circuit recently stated:

> We agree with these courts. When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality. Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders. Although we understand the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.), it makes little sense to render the district court's protective order useless simply because the plaintiffs attached a sealed discovery document to a nondispositive . . .motion filed with the court.

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir 2002).

There is also a heightened burden for parties seeking disclosure where a party placed significant reliance upon a protective order. Where significant reliance has been demonstrated, the order should not be reversed absent "extraordinary circumstances" or "compelling need." *In re Knoxville*, 723 F.2d at 478.

The Second Circuit in *Securities and Exchange Commission v TheStreet.com*, 273 F.3d 222 (2nd Cir 2001) explained the rationale of the heightened burden. The *TheStreet.com* court noted that "if previously-entered protective orders have no

6

presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would readily be set aside in the future." 273 F.3d at 229. The court further stated that "[i]t is, moreover, presumptively unfair for courts to modify protective orders which assure confidentiality and upon which parties reasonably relied." Id at 230.

Because the GMPT document was filed under seal pursuant to a protective order, the Court must first determine whether the document was properly filed under seal. If it was properly filed, the presumption does not apply and the Court must determine the extent to which GMPT relied upon the protective order. Then, if the Court is satisfied that there has been a showing of significant reliance, the Court must determine whether New York Times has demonstrated that "extraordinary circumstances" or a "compelling need," nevertheless, warrant disclosure. If evidence of reliance is lacking, New York Times must still make "a specific showing of need for access to the documents." *Certain Real Property*, 977 F.Supp at 836.

A stipulated protective order was entered in this case on January 6, 2003, pursuant to Fed. R. Civ. P. 26(c)(7).[4] One purpose of the protective order was to facilitate expedited discovery that was necessary in order for the Court to consider Plaintiffs' motions for preliminary injunction on an expedited schedule.

---

[4]Under Fed. R. Civ. P. 26(c)(7), a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . . (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."

The Order permitted the parties to designate discovery material as "confidential"[5] or "restricted confidential"[6] if there was a good faith belief that the material contained "non public, confidential, proprietary, personal or commercially sensitive information." Order, ¶1. Documents so designated were to be filed under seal. Id at ¶8.[7]

The Simon Plaintiffs obtained the GMPT document at issue via subpoena. In addition to other confidential documents, Plaintiffs, in their motion, relied upon the GMPT document, which was designated as "restricted confidential," by making reference to certain handwritten notes and attaching the entire document as an exhibit. Per the terms of the protective order, the Simon Plaintiffs' brief and exhibits were filed under seal.

On its own order, on February 20, 2003, this Court determined that good cause did not exist for the parties to have filed their briefs under seal. Therefore, the Court unsealed the Simon Plaintiffs' brief, reserving ruling on New York Times' motion as to

---

[5]"Confidential" material is defined as "all non-public materials containing information related to: trade secrets; proprietary technical information; tax data; personnel information; business information; personal financial information; Board and committee minutes; or other personally sensitive or proprietary information." Order, ¶1(a).

[6]"Restricted Confidential" material is defined as "all non-public materials containing information related to: consumer lists and information; financial results or data; financial or business plans and strategies, projections or analyses; proposed strategic transactions or other business combinations; acquisition offers or other expressions of interests; studies or analyses by internal or outside experts; competitive analyses; business and marketing plans and strategies; management contracts; or other personally sensitive or proprietary information.

[7]Any party could petition the Court for a determination of whether certain material was entitled to the protections of the Order or for modification of the Order upon good cause shown. Id at ¶¶10(d) and 13.

8

the exhibits.  As a consequence, the Simon Plaintiffs' reference in its brief to handwritten notes on one page of the GMPT document, was released to the public.  No reference was made to the balance of the document, however, and it has not been otherwise disclosed.

To determine whether the GMPT document was properly submitted under seal, the Court will consider the standards that are applied when deciding whether to grant a protective order pursuant to Fed. R. Civ. P. 26(c).  Under 26(c)(7), a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . . (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."  The burden is on the movant to establish the need for a protective order.  *Waelde v Merck, Sharp & Dohme*, 94 F.R.D. 27, 29 (E.D. Mich. 1981).

A movant must show "1) that the material is a trade secret or other confidential information and 2) that disclosure would 'work a clearly defined and very serious injury.'"  Id at 28 (quoting *United States v. IBM*, 67 F.R.D. 40, 46 (S.D.N.Y.1976)). "[V]ague and conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make 'a particularized showing that the information sought is confidential' and come forth with 'specific examples' of competitive harm."  Id (quoting *Parsons v. General Motors Corp.*, 85 F.R.D. 724, 726 (N.D.Georgia 1980)).

Although the document pertains primarily to the 1998 exchange with TCI of GMPT's partnership interest for 10 malls, GMPT contends that the document also contains "business strategies for operating those properties after the closing of the

9

proposed transaction" which, if disclosed to GMPT competitors, could result in long-term harm to GMPT's financial interests.   GMPT Br. at p14.  GMPT also asserts that its advisors/representatives would be inhibited in their willingness and ability to freely dispense advice or express thoughts on future investment decisions, for fear that their advice or thoughts may later be subject to public review.

GMPT's claims of potential financial harm are not borne out by a review of the document.  Contrary to GMPT's assertions, there is no specific reference to future business plans or strategies with regard to the malls.  In fact, the document appears to pertain almost exclusively to the terms ultimately negotiated with TCI and incorporated into the memorialized agreement.[8]

The document does, however, contain extensive handwritten notations analyzing the terms of the agreement.  GMPT contends, and the parties have not disputed, that the notations were made by GMPT advisors and/or representatives.[9]  The notations clearly represent analyses of the proposed terms and the suggestions or thoughts of the reviewer(s).[10]  However, while the Court does not doubt that GMPT intended to keep these notes confidential, GMPT has not presented persuasive evidence that their disclosure will result in competitive or other harm.  Like the typed portions of the document, the notes do not appear to refer to any plans or strategies beyond GMPT's

---

[8]The "Separation and Relative Value Adjustment Agreement" has already been released to the public, per GMPT.  A775-844.

[9]As GMPT has not asserted a claim of attorney-client privilege as to any portion of the document, presumably none of the advisors or representative was an attorney.

[10]Many of the notations are illegible or too faint to read.

10

negotiations with TCI, the final terms of which have already been released to the public.

Notwithstanding this finding, however, the Court further finds that the entire document is not a "judicial document," to which the presumptive right of access applies. The Sixth Circuit in *In re Perrigo Co*,128 F.3d 430, 441 (6th Cir 1997) has held that documents submitted by a party to induce reliance by the district court do not automatically become part of the public record.  Rather, the Court stated that a district court may, after full consideration of the relevant issues, determine whether public disclosure of a document *or portions thereof* is necessary and appropriate, because:

> [t]o hold otherwise may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and customers.

128 F.3d at 441.

The Second Circuit has, likewise, held that a document does not become a "judicial document" simply because it has been filed.  *TheStreet.com*, 273 F.3d 222. Citing its holding in a prior case, in which a newspaper sought access to sealed documents, the Court stated:

> We recalled the "long-established . . . but not absolute . . . common law right of public access to "judicial documents," but also cautioned that the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of access." . . . "Judicial documents," entitled to a presumption of public access, are "item[s] filed [with the court that are] relevant to the performance of the judicial function and useful in the judicial process." . . . These may include documents that have been sealed. With respect to all judicial documents, however, we held that, "it is proper for a district court, *after weighing competing interests*, to edit and redact a judicial document in order to allow access to *appropriate* portions of the document . . . ."

11

273 F.3d at 231 (internal citations omitted). With regard to the analysis that a district court should employ, the court stated:

> We required the District Court to determine the weight of the presumption of public access by valuating "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." We reiterated that the "public has an 'especially strong' right of access to evidence introduced in trial. In contrast, we reaffirmed the principle that
>
>> [d]ocuments that play no role in the performance of Article III functions *such as those passed between the parties in discovery* lie entirely beyond the presumption's reach and stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions.
>
>> After instructing the District Court to determine the weight of the presumption of public access, we then required it to "balance [the] competing considerations against [that presumption]. We identified at least two "countervailing factors": (1) the danger of impairing law enforcement or judicial efficiency; and (2) the privacy interests of those who resist disclosure.
>
> * * *
>
>> In describing the second countervailing factor . . . we concluded that "the privacy interest of innocent third parties . . . should weigh heavily in a court's balancing equation." We also stated that the weight of the privacy interest should depend on "the degree to which the subject matter is traditionally considered private rather than public."

Id at 232 (internal citations omitted).

In this case, GMPT is a non-party whose involvement is only peripheral to the claims raised. The Simon Plaintiffs only cite language from and rely upon one page of GMPT's seven-page document. One can ascertain the context of the discrete language

12

cited without referring to the entire document.  Although the Court has found that the document does not appear to contain information that would be harmful to GMPT if released, it is an internal corporate document that one would typically expect to be kept confidential.   Because GMPT is an innocent third party and the document at issue contains information that is traditionally considered private rather than public, the balance of interests weighs heavily in GMPT's favor.  Accordingly, with the exception of the page that contains the language that has already been disclosed, the Court finds that GMPT's document is not a judicial document and the presumptive right of access does not apply.  Therefore, all but one page of the document was properly filed under seal.

The Court's inquiry with regard to this document must now turn to whether GMPT reasonably relied on the confidentiality provisions of the protective order.  The extent to which GMPT *reasonably* relied upon the protective order is questionable.  GMPT was (presumably) aware that the agreement, by its express terms, is subject to modification by the Court.  The protective order states that any party can petition the Court for a determination of whether certain material is entitled to the protections of the Order or for modification of it upon good cause shown.  Id at ¶¶10(d) and 13.  These facts belie GMPT's assertion regarding the extent to which it believed that its document was impenetrably insulated from public disclosure.

Nevertheless, even though there is insufficient evidence that GMPT reasonably relied upon the protective order, New York Times must still make "a specific showing of need for access to the documents," in order to gain access to the document.  *Certain Real Property*, 977 F.Supp at 836.  New York Times has not made such a showing.  As

did the movant in, *Certain Real Property*, New York Times has only made general assertions regarding its right to access to court files and the public's need to know all of the particulars in the GMPT/TCI transaction.  The Court finds, as did the Court in *Certain Real Property*, that such general assertions do not satisfy New York Times' burden to make a "specific" showing.  Therefore, the New York Times has failed to demonstrate that 6 of the 7 pages should be unsealed.

The page containing the handwritten quote that has been disclosed, however, has become part of the judicial record.  Plaintiffs relied upon the handwritten notation and the typed language to which it refers in support of their arguments.  The Court, therefore, will consider the cited language in the performance of its judicial function, even if only to reject its significance.  GMPT has not demonstrated that its privacy interest in maintaining that sole page under seal outweighs the presumptive right of access to judicial records.  Therefore, the Court finds that page A859 of the GMPT document was not properly filed under seal and must be released.

New York Times' second request, that the Court prohibit the parties from filing documents under seal, is denied.  New York Times has not cited any authority that supports its contention that a blanket preemptive order is appropriate.  The standard of review required under Fed. R. Civ. P. 26 and the relevant case law will adequately protect the interests of  both the public and the parties with regard to any additional documents filed pursuant to the protective order.

IV.    **CONCLUSION**

Based upon the foregoing, New York Times' Motion to Intervene and to Open

14

Sealed Materials is GRANTED IN PART and DENIED IN PART. GMPT's Motion to

Intervene and Maintain Materials Under Seal is also GRANTED IN PART and DENIED

IN PART.  Page A859 shall be released.  Pages A854-858 and 860 shall remain under

seal.

**IT IS SO ORDERED.**

Victoria A. Roberts
United States District Judge

Dated: APR 17 2003

15