UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SIMON PROPERTY GROUP, INC., et al.,

    Plaintiffs,                  File No.  02-74799

v.                               The Honorable Victoria A. Roberts

TAUBMAN CENTERS, INC., et al.,

    Defendants.

---

Joseph Aviv (P 30014)
Bruce L. Segal (P 36703)
Matthew F. Leitman (P 48999)
Miro Weiner & Kramer
a professional corporation
Attorneys for Defendants
Suite 100
38500 Woodward Avenue
Bloomfield Hills, Michigan 48303-0908
Telephone: (248) 258-1207
Facsimile:  (248) 646-4021

Of counsel

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

I.W. Winsten (P 30528)
Raymond W. Henney (P 35860)
Honigman Miller Schwartz and Cohn, LLP
Attorneys for Defendants
2290 First National Building
Detroit, Michigan 48226-3583
Telephone: (313) 465-7000

---

**DEFENDANTS' MOTION TO SUSPEND INJUNCTION PENDING APPEAL**

## DEFENDANTS' MOTION TO SUSPEND INJUNCTION PENDING APPEAL

The defendants, by their attorneys, Miro Weiner & Kramer, a professional corporation, and Honigman Miller Schwartz and Cohn, LLP, move, under Fed. R. Civ. P. 62 (c) and Fed. R. App. P. 8(a)(1), to suspend the preliminary injunction granted in the Amended Opinion and Order entered on May 8, 2003 (the "Order"), and to stay the Order during the pendency of the defendants' appeal from the Order.  In the alternative, the defendants move to stay the Order until the United States Court of Appeals for the Sixth Circuit decides the defendants' motion made to the Court of Appeals for a stay of the Order pending appeal.  In support, the defendants say:

1.      The plaintiffs are presently pursuing a hostile tender offer of the defendant Taubman Centers, Inc., a Michigan corporation (the "Company"), after their offer to acquire the Company was rejected as inadequate by the Company's board of directors (the "Board").

2.      The Order grants the plaintiffs a preliminary injunction ordering that (i) "Defendants are enjoined from enforcing the December 20, 2002 Special Meeting Amendment to the TCI bylaws," and (ii) "none of the 33.6% [sic] outlined by the Defendants in their November 14, 2002 Schedule D/A [sic] can be voted."  (Am. Op. & Order at 48.)

3.      The defendants filed a Notice of Appeal on May 9, 2003, and intend to move to expedite the appeal.

4.      If the Order is not stayed during the pendency of the appeal, the defendants will be denied any meaningful appeal because the Company will be immediately sold and disappear as an independent company before the defendants' appeal can be heard.  Given the plaintiffs' statements to both the public and the Court of their intent to call a special meeting and

consummate their hostile tender offer immediately, the injunction against the voting of the shares owned by the members of the Taubman family and the signatories to the voting agreements - thereby immediately disenfranchising shares representing more than one-third of the voting power of the Company - will leave no issue for appeal. This is because all of the publicly-traded shares of stock of the Company - including those held by the defendants - will be forcibly acquired by the plaintiffs before any appeal. The harm to the defendants in that instance will be both immeasurable and irreparable.

5.      The balance of hardships weighs strongly in favor of staying the Order during the pendency of the appeal because the stay will simply preserve the status quo.

6.      The defendants will suffer irreparable harm if the injunction is not suspended because they will lose the right to vote their shares at the special meeting to be scheduled by the plaintiffs, and they will lose any say in the management of the Taubman UPREIT and the Company that they founded and fostered over the past 50 years. The Company will no longer be a publicly-traded corporation, will no longer have an independent existence, and there will be no way to restore it to its present position if the Court of Appeals determines that the injunction was wrongfully granted.

7.      The plaintiffs will not be prejudiced by a stay of the Order and will not suffer any harm because there will simply be a short delay in their ability to consummate their hostile tender offer. Given the fact that the plaintiffs waited two months after the commencement of the case before even filing their motion for a preliminary injunction and did so only after the Court set a *deadline* for filing such a motion, there is no apparent urgency, and, in fact, any urgency in this case is of the plaintiffs' own making.

{W0163974.DOC;}                              2

8.     The public will be injured if the Order is not stayed because the Board has already determined that the $20 per share price offered by the plaintiffs is inadequate. This Court has already found that the Board's judgment as to the inadequacy of the price offered by the plaintiffs was reached on an informed basis, in good faith, and in the honest belief that the rejection of the offer was in the best interests of the Company. (*See* Am. Op. & Order at 30-34.) This is significant because, as most of the stock research analysts have stated, even if the preliminary injunction is upheld on appeal, the Board should have the option, and the opportunity, to consider alternative purchasers by putting the Company up for auction to obtain the highest and best price for the shares. Moreover, as many analysts have concluded, in such a circumstance, the price may be as high as $25 to $30 per share.

9.     Rule 62(c) does not mandate the filing of a bond, and no bond should be required as a condition of a stay of the Order because there will be no pecuniary harm to the plaintiffs who will merely be delayed a short time in pursuit of their takeover.

10.    This motion is supported by the Brief in Support of Defendants' Motion to Suspend Injunction Pending Appeal, which sets forth with greater particularity the grounds for the relief sought by this motion, and the exhibits filed with it.

11.    As required by E.D. Mich. LR 7.1(a)(2)(B), counsel for defendants, Joseph Aviv, telephoned counsel for SPG, Carl H. von Ende, on May 9, 2003, but was unable to conduct a conference call as Mr. von Ende was not in his office. Mr. Aviv left Mr. von Ende a voice mail message requesting a return call.

Wherefore, the defendants request the Court to grant this motion and enter an order suspending the injunction and staying the Order during the pendency of the defendants' appeal,

{W0163974.DOC;}                              3

or, in the alternative, until the United States Court of Appeals for the Sixth Circuit decides the

defendants' motion made to the Court of Appeals for a stay of the Order pending appeal.

> MIRO WEINER & KRAMER
> a professional corporation
> Attorneys for Defendants
>
> By: _____
>   Joseph Aviv (P 30014)
>   Bruce L. Segal (P 36703)
>   Matthew F. Leitman (P 48999)
>   Suite 100
>   38500 Woodward Avenue
>   Bloomfield Hills, Michigan 48303-0908
>   Telephone: (248) 258-1207
>   Facsimile:  (248) 646-4021
>
>
> HONIGMAN MILLER SCHWARTZ
>   AND COHN, LLP
> Attorneys for Defendants
>   I.W. Winsten (P 30528)
>   Raymond W. Henney (P 35860)
>   2290 First National Building
>   Detroit, Michigan 48226-3583
>   Telephone: (313) 465-7000

Of counsel

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

{W0163974.DOC;}                     4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SIMON PROPERTY GROUP, INC., et al.,

       Plaintiffs,               File No.  02-74799

v.                           The Honorable Victoria A. Roberts

TAUBMAN CENTERS, INC., et al.,

       Defendants.

---

Joseph Aviv (P 30014)
Bruce L. Segal (P 36703)
Matthew F. Leitman (P 48999)
Miro Weiner & Kramer
a professional corporation
Attorneys for Defendants
Suite 100
38500 Woodward Avenue
Bloomfield Hills, Michigan 48303-0908
Telephone: (248) 258-1207
Facsimile:  (248) 646-4021

Of counsel

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

I.W. Winsten (P 30528)
Raymond W. Henney (P 35860)
Honigman Miller Schwartz and Cohn, LLP
Attorneys for Defendants
2290 First National Building
Detroit, Michigan 48226-3583
Telephone: (313) 465-7000

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO SUSPEND INJUNCTION PENDING APPEAL**

TABLE OF CONTENTS

Index of Authorities .......................................................................................... iii

Index of Exhibits .............................................................................................. v

Statement of the Issues Presented .................................................................. vi

Controlling or Most Appropriate Authority ...................................................... viii

Preliminary Statement ...................................................................................... 1

Argument .......................................................................................................... 3

    I.      SUSPENSION OF A PRELIMINARY INJUNCTION IS APPROPRIATE
          WHERE THE COURT ADDRESSED A NOVEL ISSUE OF LAW AND
          THE FAILURE TO SUSPEND THE INJUNCTION WILL DESTROY
          THE OPPORTUNITY FOR A MEANINGFUL APPEAL ...................................... 4

    II.     THE BALANCE OF FACTORS WEIGHS HEAVILY IN FAVOR OF A
          STAY OF THE ORDER PENDING APPEAL ........................................................ 6

    III.    THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS OF
          THE INJUNCTION PROHIBITING THE AMENDMENT OF THE
          COMPANY'S BYLAWS TO ESTABLISH A REASONABLE METHOD
          TO CALL SPECIAL MEETINGS OF SHAREHOLDERS .................................... 7

    IV.    THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS OF
          THE INJUNCTION PROHIBITING THE MEMBERS OF THE
          TAUBMAN FAMILY AND OTHER SHAREHOLDERS FROM
          VOTING THEIR STOCK ...................................................................................... 8

          A.    The Taubman Family Members' Shares ................................................ 8

          B.    The 2.9% Shares Covered by the Voting Agreements ......................... 12

          C.    Lack of Standing ................................................................................... 13

    V.     THE DEFENDANTS WILL BE IRREPARABLY HARMED IF THE
          ORDER IS NOT STAYED DURING APPEAL .................................................... 14

    VI.    A STAY OF THE ORDER WILL NOT HARM SPG .......................................... 17

{W0164083.DOC;}          i

VII.    THE PUBLIC INTEREST WILL BENEFIT FROM A STAY OF THE
        ORDER PENDING APPEAL ...............................................................................17

VIII.   NO BOND OR OTHER SECURITY SHOULD BE REQUIRED
        BECAUSE THERE WILL BE NO MONETARY OR OTHER HARM TO
        SPG ...............................................................................................................18

Relief Requested ..........................................................................................................19

INDEX OF AUTHORITIES

<u>Cases</u>

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930)................................................................13

*Atlantis Group, Inc. v. Alizac Partners*, No. 1:90-CV-937, slip op.
    (W.D. Mich. Dec. 5, 1991) (op. denying prelim. inj.).................................................10, 11

*Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927 (6th Cir. 2002) .................................6

*Beztak Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274 (E.D. Mich. 1992) ...........................14

*Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 600 F. Supp. 1326
    (E.D. Mich.), *aff'd*, 753 F.2d 1354 (6th Cir. 1985) ...........................................................17

*Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2000)......................................13

*Detroit Fire Fighters Ass'n v. City of Detroit*, 449 Mich. 629 (1995) ...........................................13

*General Aircraft Corp. v. Lampert*, 556 F.2d 90 (1st Cir. 1977)....................................................11

*Grutter v. Bollinger*, 247 F.3d 631 (6th Cir. 2001)..........................................................................6

*Heritage Bank v. Redcom Lab., Inc.*, 250 F.3d 319 (5th Cir. 2001) ................................................7

*Homac, Inc. v. DSA Fin. Corp.*, 661 F. Supp. 776 (E.D. Mich. 1987) ...............................5, 11, 15

*Interco Inc. v. City Capital Assocs. Ltd.*, 556 A.2d 1070 (Del. 1988).............................................5

*Mentor Graphics Corp. v. Quickturn Design Sys. Inc.*, 728 A.2d 25 (Del. Ch.),
    *aff'd on other grounds, Quickturn Design Sys. Inc. v. Shapiro*,
    721 A.2d 1281(Del. 1998) ...................................................................................................8

*Paramount Communications, Inc. v. Time Inc.*, 571 A.2d 1140 (Del. 1989) ...................................5

*Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979) ...........4

*Snellman v. Ricoh Co.*, 836 F.2d 528 (Fed. Cir. 1987)....................................................................7

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ........................................................................................4, 5

{W0164083.DOC;}

iii

*Young v. General Acceptance Corp.*, 770 N.E.2d 298 (Ind. 2002) ........................................10, 11


Statutes and Court Rules

E.D. Mich. LR 7.1(c)(2)..................................................................................................7

Fed. R. Civ. P. 7(b)(1)....................................................................................................7

Fed. R. Civ. P. 62(c) ...........................................................................................3, 18, 19

Mich. Comp. Laws §450.1791(1).................................................................................8, 9

Mich. Comp. Laws §450.1791(4)(c)...............................................................................12

15 U.S.C. §78m(d)..........................................................................................................11

28 U.S.C. §1292(a)(1).....................................................................................................18


Other Authorities

11 Charles Alan Wright et al., *Federal Practice and Procedure:*
    *Civil 2d* §2904 (2d ed. 1995) ...............................................................................3

13 Charles Alan Wright et al., *Federal Practice and Procedure:*
    *Civil 2d* §3531.7 (2d ed. 1984) ..........................................................................13

House Legislative Anal., H.B. 4907 & 4936 (Mar. 18, 1988)........................................14

Indiana Comments to Ind. Code 23-1-42-1 ...............................................10, 11, 12, 13

Indiana Comments to Ind. Code 23-1-42-9 ..................................................................13

Senate Fiscal Agency Bill Anal., H.B. 4907 (S-1) & 4936 (S-1) (Feb. 18, 1988) ........14

### INDEX OF EXHIBITS

Exhibit A          Mem. to Board from Counsel dated Dec. 18, 2002

Exhibit B          Mins. of Meeting of Board Dec. 20, 2002

Exhibit C          Banc of America Securities Industry Overview (Nov. 15, 2002)

## STATEMENT OF THE ISSUES PRESENTED

I. Whether the Court should stay that portion of its May 8, 2003, order that "Ordered that Defendants are enjoined from enforcing the December 20, 2002 Special Meeting Amendment to the TCI bylaws and must, instead, honor the provision in place immediately prior to the Amendment" where:

1. The plaintiffs did not seek this relief in their motion for a preliminary injunction or supporting brief.

2. The defendants are likely to prevail on the merits of the appeal:

   a. The Special Meeting Amendment is not intended to interfere or impede shareholder voting, and the Board of Directors acted on the advice of counsel that the amendment would not substantively interfere with the right of the shareholders to call a special meeting, the amendment would create an orderly process for holding shareholder meetings, and that the process adopted is common among publicly held companies.

   b. The Special Meeting Amendment does not interfere with or impede shareholder voting.

3. The defendants and the public will be irreparably harmed if a stay is not granted pending appeal because it will be impossible to undo the effect of the preliminary injunction if the plaintiffs proceed in accordance with their stated intent - to rescind the Company's excess share provision and to purchase all or substantially all of the common stock from shareholders in a hostile tender offer.

4. The plaintiffs will not suffer any irreparable injury if the order is stayed pending appeal.

The defendants say: Yes.

II. Whether the Court should stay that portion of its May 8, 2003, order that "Ordered that none of the 33.6% [sic] outlined by the Defendants in their November 14, 2002 Schedule D/A [sic] can be voted, unless voting rights are extended to the shares in accordance with the Control Share Act [the "Act"]," where:

1. The defendants are likely to prevail on the merits of the appeal:

MIRO WEINER & KRAMER, P.C.

a.  The *formation* of a group is not in itself a "control share acquisition" under the Act – only the shares acquired by the group are subject to the Act.

b.  No group was formed in 2002 – to the extent the Taubman family is a "group" under the Act, it was formed when the family members first acquired their Series B stock in 1998.

c.  The formation of a group by the members of the Taubman family after the initial issuance of the Series B stock by the Company cannot, in and of itself, be a "control share acquisition" with respect to any family member's shares because no member of the Taubman family has been given "ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding control shares."

d.  The formation of a group by the members of the Taubman family after the initial issuance of the Series B stock by the Company cannot, in and of itself, be a "control share acquisition" with respect to any family member's shares because no consideration was paid by any member of the Taubman family to any other member of the Taubman family for "ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding control shares," and the Act (in contrast to the Indiana Control Shares Acquisition Act) includes an express provision that the acquisition of shares without consideration is not a "control share acquisition."

e.  The plaintiffs lack the legal standing to assert their claims under the Act.

2.  The defendants and the public will be irreparably harmed if a stay is not granted pending appeal because it will be impossible to undo the effect of the preliminary injunction if the plaintiffs proceed in accordance with their stated intent - to rescind the company's excess share provision and to purchase all or substantially all of the common stock from shareholders in a hostile tender offer.

3.  The plaintiffs will not suffer any irreparable injury if the order is stayed pending appeal.

The defendants say: Yes.

{W0164083.DOC;}

vii

<div align="center">

CONTROLLING OR MOST APPROPRIATE AUTHORITY

</div>

1.  Suspension of the Preliminary Injunction Is Proper Where the Court Addressed a Novel Issue of Law and the Failure to Suspend the Injunction Will Destroy the Opportunity for a Meaningful Appeal

    *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927 (6th Cir. 2002)

    *Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979)

    *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977)

2.  There Are Serious Questions Going to the Merits of the Injunction Prohibiting Enforcement of the Amendment of the Company's Bylaws

    Fed. R. Civ. P. 7(b)(1)

    E.D. Mich. LR 7.1(c)(2)

    *Heritage Bank v. Redcom Lab., Inc.*, 250 F.3d 319 (5th Cir. 2001)

    *Mentor Graphics Corp. v. Quickturn Design Sys. Inc.*, 728 A.2d 25 (Del. Ch.), *aff'd on other grounds*, *Quickturn Design Sys. Inc. v. Shapiro*, 721 A.2d 1281(Del. 1998)

    *Snellman v. Ricoh Co.*, 836 F.2d 528 (Fed. Cir. 1987)

3.  There Are Serious Questions Going to the Merits of the Injunction Prohibiting Members of the Taubman Family and Other Shareholders from Voting Their Stock

    Mich. Comp. Laws §450.1791(1)

    Indiana Comments to Ind. Code 23-1-42-1

    *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930)

    *Atlantis Group, Inc. v. Alizac Partners*, No. 1:90-CV-937, slip op. (W.D. Mich. Dec. 5, 1991)

    *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2000)

*Detroit Fire Fighters Ass'n v. City of Detroit*, 449 Mich. 629 (1995)

*Young v. General Acceptance Corp.*, 770 N.E.2d 298 (Ind. 2002)

4.    The Defendants Will Suffer Irreparable Harm if the Injunction Is Not Suspended During the Pendency of the Appeal

*Beztak Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274 (E.D. Mich. 1992)

*Homac, Inc. v. DSA Fin. Corp.*, 661 F. Supp. 776 (E.D. Mich. 1987)

*Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979)

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977)

{W0164083.DOC;}                              ix

PRELIMINARY STATEMENT

This litigation involves a hostile tender offer by the plaintiffs, Simon Property Group, Inc., and its acquisition subsidiary (together, "SPG"), for control of Taubman Centers, Inc., a Michigan corporation (the "Company"). The defendants seek a stay pending appeal of the Court's Amended Opinion and Order entered in this action on May 8, 2003 (the "Order"), granting a preliminary injunction that (i) disenfranchises shares representing 33.6% of the voting power of the Company, most of which are owned or controlled by members of the founding Taubman family, and (ii) strikes a bylaw amendment intended to ensure an orderly process in scheduling special shareholders' meetings called by the Company's shareholders. On May 9, 2003, the defendants filed a Notice of Appeal to the United States Court of Appeals for the Sixth Circuit, and they intend to move to expedite the appeal.

Since 1992, the Company's Articles of Incorporation (the "Articles") have included an Ownership Limit that prohibits any shareholder from holding more than 8.23% of the Company's common stock. Therefore, to effectuate its tender offer, SPG must amend the Articles to eliminate the Ownership Limit. Because an amendment of the Articles requires the affirmative vote of two-thirds of the Company's voting shares, and because members of the Taubman family hold over 30% of the voting shares, SPG sought to nullify the Taubman family's voting power.

As soon as the Court entered its initial Opinion and Order enjoining the Taubman family from voting their shares, SPG announced in a letter to the Court that it intends to promptly schedule a special meeting of the shareholders to eliminate the Ownership Limit and effectuate its tender offer and merge the Company into SPG. (*See* letter to Court from Carl H. von Ende

dated May 2, 2003, at 1.)   Once this is done, the Company will cease to exist as a public company, and there will be no way to restore the Company if the United States Court of Appeals for the Sixth Circuit determines that the preliminary injunction was wrongfully granted.   In essence, there will be no opportunity for appellate review.

Unless the injunction is suspended during the pendency of the appeal, the Company will be acquired over the objection of 33.6% of the voting shares held by members of the Taubman family and other shareholders, at a price that the Company's board of directors (the "Board") has rejected as inadequate, and there will be no chance to restore the status quo.   This Court has already found that the Board's judgment as to the inadequacy of the price offered by SPG was reached on an informed basis, in good faith, and in the honest belief that the rejection of the offer was in the best interests of the Company.   (*See* Am. Op. & Order at 30-34.)

In contrast to the devastating harm that the defendants will suffer if the Order is not stayed, SPG would simply incur a modest delay in proceeding with its tender offer while the Court of Appeals reviews the case.   There is no evidence that the short delay necessary to allow this appeal to proceed would irreparably harm SPG in any way.   Time is not of the essence to the tender offer, and SPG has repeated stated that it is "in this fight for the long haul."   Indeed, SPG waited two months after it commenced this case before it even filed any motion for a preliminary injunction.

Finally, and critically, the public interest requires a stay of the Order during the pendency of the appeal.   Hundreds of jobs and a substantial number of the Company's business transactions, regarding both new and existing shopping centers (involving leasing, construction, financing, and management), will be irreparably affected if SPG consummates its tender offer.

{W0164083.DOC;}                                    2

The public will also be harmed because the Board (which has already received the advice of its investment bankers that the $20 per share price offered by SPG is inadequate) would be placed in the untenable position of, on the one hand, having to consider seeking alternative purchasers by putting the Company up for auction to obtain the highest and best price for the shares, while on the other hand, being unable to make a definitive deal because of the pending appeal. In this regard, it is notable that many stock research analysts have concluded that, in an auction, the price may be as high as $25 to $30 per share.

If the injunction is not suspended, no issue will remain for appellate review. The harm to the defendants will be immense, immeasurable, and irreparable.

<div align="center"><strong>ARGUMENT</strong></div>

Rule 62(c) expressly allows the Court "in its discretion" to "suspend" an injunction during the pendency of an appeal. Fed. R. Civ. P. 62(c). As stated in Wright, Miller & Kane:

> When there is reason to believe that an appeal will be taken, there is no reason why the court should not make an order preserving the status quo during the expected appeal.

11 Charles Alan Wright et al., *Federal Practice and Procedure: Civil 2d* §2904 at 516-17 (2d ed. 1995). In this case, there will be no status quo to preserve if SPG is permitted to proceed with its tender offer and merger, and the defendants will suffer immeasurable and irreparable harm. Accordingly, the defendants submit that the Court should suspend under Rule 62(c) the Order during the pendency of the appeal because, without such a stay, SPG's actions will render the appeal meaningless.

{W0164083.DOC;}                                    3

## I.   SUSPENSION OF A PRELIMINARY INJUNCTION IS APPROPRIATE WHERE THE COURT ADDRESSED A NOVEL ISSUE OF LAW AND THE FAILURE TO SUSPEND THE INJUNCTION WILL DESTROY THE OPPORTUNITY FOR A MEANINGFUL APPEAL

It is well established that the entry of a stay is appropriate where the failure to do so would "entirely destroy appellants' right to secure meaningful review." *Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979) (granting stay pending appeal where failure to do so would "entirely destroy appellants' rights to secure meaningful review"). For example, in *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977), the trial court entered a permanent injunction restraining the defendant from operating its business without a certificate of public convenience and necessity. Recognizing, however, that the injunction would put the defendant out of business before an appeal could be heard, the court stayed its injunction pending appeal. *See id.* at 842. Affirming the trial court's stay, the Court of Appeals determined that, on balance, a stay was appropriate because "[t]he harm to Holiday Tours in the absence of a stay would be its destruction in its current form as a provider of bus tours." *Id.* at 843 (footnote omitted). As the Court explained its balance:

> We believe that this approach is entirely consistent with the purpose of granting interim injunctive relief, whether by preliminary injunction or by stay pending appeal. Generally, such relief is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit. An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.

*Id.* at 844.

In this case, as in *Washington Metropolitan*, the failure to grant a stay will end the Company's existence as a publicly-traded corporation, and the only way to accomplish meaningful appellate review is to grant a stay during the pendency of the appeal. Absent such a stay, there will be nothing "preliminary" about this Court's injunction, and appellate review, as well as a future trial on the merits, will be meaningless because the Company will no longer exist. *Homac, Inc. v. DSA Fin. Corp.*, 661 F. Supp. 776, 783 (E.D. Mich. 1987) (Cook, J.) ("Once the company has been taken over, courts can rarely, if ever, 'unscramble the eggs.'").

The Delaware courts, which hear these cases most frequently, and whose procedural rules are virtually identical to the Federal Rules of Civil Procedure, routinely enter a stay pending appeal. For example, in *Interco Inc. v. City Capital Assocs. Ltd.*, 556 A.2d 1070 (Del. 1988), the Chancery Court issued a mandatory preliminary injunction requiring a target company to redeem a so-called "poison pill," which was blocking the completion of a hostile tender offer. Unless stayed, the lower court's order would have resulted in the immediate sale of the company. In order to permit Supreme Court review, therefore, the Chancery Court granted a stay pending an appeal by the target, which proceeded on an expedited basis.

Likewise, in litigation over Time's merger with Warner Communications, the Chancery Court of Delaware refused to enjoin Time from proceeding with its tender offer for Warner. But since consummation of the tender offer would have effectively cut off Paramount's attempt to take over Time, Time was stayed from proceeding with the tender offer pending appeal. *Paramount Communications, Inc. v. Time Inc.*, 571 A.2d 1140, 1142 (Del. 1989).

## II.   THE BALANCE OF FACTORS WEIGHS HEAVILY IN FAVOR OF A STAY OF THE ORDER PENDING APPEAL

The Court should consider four factors in deciding whether to stay the order pending appeal:

(1)   the likelihood that the party seeking the stay will prevail on the merits of the appeal;

(2)   the likelihood that the moving party will be irreparably harmed absent a stay;

(3)   the prospect that others will be harmed if the court grants the stay; and

(4)   the public interest in granting the stay.

*Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001).

As the United States Court of Appeals for the Sixth Circuit has explained, the appellant must show more than a mere possibility of success on the merits, but the level of success is "*inversely proportional*" to the harm that the appellant will suffer without a stay. *See id.* at 633 (emphasis added).

[I]n order to justify a stay of the district court's ruling, the defendant must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted.

*Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002).

In this case, the defendants submit that the balance weighs heavily in favor of a stay pending appeal.

{W0164083.DOC;}                     6

III.    **THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS OF THE INJUNCTION PROHIBITING THE AMENDMENT OF THE COMPANY'S BYLAWS TO ESTABLISH A REASONABLE METHOD TO CALL SPECIAL MEETINGS OF SHAREHOLDERS**

The defendants respectfully submit that an injunction with respect to the special meeting amendment was wrongfully granted for three reasons.    First, SPG never moved for any injunctive relief with respect to the special meeting amendment!   Indeed, SPG never even filed with the Court a copy of the amended bylaw.   Under Rule 7(b)(1), a motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought."   Fed. R. Civ. P. 7(b)(1).   Similarly, under Local Rule 7.1(c)(2), briefs "must, at the beginning, contain a concise statement of the issues presented."   E.D. Mich. LR 7.1(c)(2).   Yet, here, SPG made no mention whatsoever of the special meeting amendment in either its motion or brief, much less any request for injunctive relief concerning that amendment, and SPG was not entitled to relief not sought. A court cannot grant injunctive relief that has not been requested in the motion.   *See Heritage Bank v. Redcom Lab., Inc.*, 250 F.3d 319, 328 (5th Cir. 2001); *see also Snellman v. Ricoh Co.*, 836 F.2d 528, 532 (Fed. Cir. 1987) (district court properly interpreted Rule 7(b)(1) as requiring party to specify relief sought in motion).

Second, the special meeting amendment is not intended to interfere with or impede shareholder voting in any manner.   In fact, the Board acted on the advice of counsel that (i) the amendment would not substantively interfere with the right of the shareholders to call a special meeting, (ii) the amendment would create an orderly process for holding shareholder meetings, (iii) the amendment is consistent with, but more clear and less subject to dispute than, other provisions already in the Company's bylaws and Michigan law, and (iv) the process adopted is common among publicly held companies. (*See, e.g.*, Mem. to Board from Counsel dated Dec.

{W0164083.DOC;}                                  7

18, 2002, at 2-3 (attached as Ex. A); Mins. of Meeting of Board Dec. 20, 2002, at 2-3 (attached as Ex. B).)

Third, the Company had good business reasons to adopt the bylaw amendment - to clarify the old bylaw and ensure an orderly process to holding special meetings.   Under the bylaw amendment, the shareholders are in no way thwarted from calling a special meeting.   Rather, if they do call a special meeting, the bylaw amendment provides that the Board, within 10 days from the receipt of the request, must fix a meeting date not sooner than another 30 or later than another 90 days afterward.   Although this Court relied on Delaware law in striking the bylaw amendment, the Delaware courts have explicitly upheld bylaw amendments passed in the midst of a takeover contest that give the target's board even more latitude than the one struck down in this case (and struck down in this case without any briefing on the subject by SPG).   *See Mentor Graphics Corp. v. Quickturn Design Sys. Inc.*, 728 A.2d 25, 38-43 (Del. Ch. 1998) (upholding bylaw mandating a 90 to 100-day period of delay for holding the meeting after a proper shareholder request has been made), *aff'd on other grounds, Quickturn Design Sys. Inc. v. Shapiro*, 721 A.2d 1281, 1288 (Del. 1998).

## IV.   THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS OF THE INJUNCTION PROHIBITING THE MEMBERS OF THE TAUBMAN FAMILY AND OTHER SHAREHOLDERS FROM VOTING THEIR STOCK

### A.   The Taubman Family Members' Shares

The defendants submit that there are significant errors in the Court's enjoining the members of the Taubman family and the signatories to the voting agreements from voting their shares under the Control Share Acquisitions Act (the "Act").   First, the Act applies only to the *acquisition* of "control shares," meaning the "acquisition . . . of ownership of, or *the power to*

*direct the exercise* of voting power with respect to, issued and outstanding control shares."
Mich. Comp. Laws §450.1791(1) (emphasis added).

The undisputed facts show that none of the Taubman family members' shares were included in, or subject to, the voting agreements. The Taubman family members' shares were acquired before Robert S. Taubman entered into the voting agreements. And most of these shares are held by trusts and other entities controlled by A. Alfred Taubman, who was never a party to any voting agreement. Any injunction sterilizing the Taubman family members' shares would therefore penalize the members of the Taubman family for doing nothing more than announcing opposition to the plaintiffs' $17.50 offer, which everyone, including SPG (having raised its offer twice since then), now recognizes was inadequate. Such a result would be improvident, wrong, and unjust.

In fact, there is no evidence that any person or entity acquired ownership of, or the power to direct the exercise of voting power over, any of the shares of any member of the Taubman family. None of the Taubman family members' shares ever changed hands in connection with the voting agreements, and there is no evidence in the record to the contrary. The undisputed evidence is that the Taubman family members each continue to own and vote their shares separately and independently, and there is no basis whatsoever to find that anyone "acquired" either ownership of those shares or the power to vote them. For example, there is *no* evidence that anyone has ever acquired the ownership of or the right to direct the voting of the shares of stock controlled by A. Alfred Taubman. Thus, those shares could not possibly be the subject of a "control share acquisition," much less be subject to the Act.

Second, a finding that the Taubman family acted as a group with respect to Robert Taubman's voting agreements with three business or social acquaintances does not subject the shares already owned by the family to the Act.   The Act only sterilizes shares *acquired* by the group in a control share acquisition, i.e., the shares subject to the voting agreements, owned by the third parties, the voting power over which was granted to Robert Taubman in the now-terminated agreements.   As the official comments of the General Corporation Law Study Commission to the Indiana Business Corporation Law (the "Indiana Comments") state:

> "Control shares" are not "all shares" owned by the acquiring person, but only the shares acquired in the "control share acquisition" . . . that, when added to the acquiring person's pre-acquisition holdings, put the person over one of the three specified thresholds of voting power.

Indiana Comments to Ind. Code 23-1-42-1 (underlining in original).[1]   The Supreme Court of Indiana explained in *Young v. General Acceptance Corp.*, 770 N.E.2d 298, 301 (Ind. 2002), that "[t]he effect of the application of the statute is not to disable all shares owned by the acquirer. Rather it prevents only the voting of the shares acquired in the control share acquisition . . . ." Here, to the extent that there was any control share acquisition, it was only with respect to the 2.9% of the shares that were subject to the voting agreements.

There is no authority in Michigan or any other state holding that the formation of a group to oppose an offer in and of itself constitutes a control share acquisition sterilizing all of the group's shares.   This Court's decision is the very first.

And this Court's decision is at odds with the only case that has  addressed the issue of whether a group formation in and of itself can constitute a control share acquisition. *Atlantis*

---

[1] Michigan's Control Share Acquisitions Act is based on Indiana's control share act.

{W0164083.DOC;}                                        10

*Group, Inc. v. Alizac Partners*, No. 1:90-CV-937, slip op. (W.D. Mich. Dec. 5, 1991) (op.

denying prelim. inj.), which flatly rejects SPG's position, and which was cited and discussed at

length in the defendants' brief. *Atlantis* is consistent with the *Young* decision, where the

Supreme Court of Indiana held that the statute is triggered only where there has been an

"acquisition" of the power to "direct the vot[e]" - in that case, the acquisition of the *irrevocable*

right to direct the vote under a voting agreement. *Young*, 770 N.E.2d at 302. The court held that

a *revocable* proxy, evidencing only a nonbinding agreement as to how to vote, is not covered.

*Id. A fortiori*, a mere nonbinding alignment of shareholders that was not even evidenced by a

revocable proxy is not an "acquisition" covered by the Act.

     The mere fact that under Federal law each member of a "group" for the purpose of

Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. §78m(d), may be required to

make the disclosures required by the section does not mean that, under the Michigan Act, all of

the shares of the group members are disenfranchised if any member of the group makes a control

share acquisition. Indeed, even where Section 13(d) has itself been violated, the Federal courts

have refused to order "sterilization" of previously-owned shares as a remedy, rejecting it as

"punishment, not deterrence, since it would deprive appellants of previously acquired voting

rights without sound reason." *General Aircraft Corp. v. Lampert*, 556 F.2d 90, 97 (1st Cir.

1977); *see also Homac, Inc. v. DSA Fin. Corp.*, 661 F. Supp. 776, 794 (E.D. Mich. 1987) (Cook,

J.).

     The *only* consequence of finding the existence of a "group" under the Act is that the court

will then look to the aggregate shares owned by the group to determine whether an acquisition by

a group member crosses one of the Act's thresholds. As the Indiana Comments explain, "the

legal form of the *acquisition*, or whether the *acquisition* is made by one person or by two or more persons acting cooperatively or in concert, will not affect the application of the Chapter." Indiana Comments to Ind. Code 23-1-42-1 (emphasis added).  Even then, only the "control shares" newly-acquired by the group members will be subject to the Act.

The fact that several people getting together and deciding that they wish or even plan to vote in a similar manner may trigger the filing requirements of Section 13(d) does not mean that these people can be deemed to have engaged in a control share acquisition, unless there is actual authorization given to irrevocably control the voting of shares, and that authority is given for consideration.[2]  In this case, there is no evidence or even a suggestion that any member of the Taubman family gave any other member of the family an irrevocable right to vote his or her shares, nor any evidence that any member of the Taubman family gave any consideration to vote the shares of any other member.

## B.      The 2.9% Shares Covered by the Voting Agreements

There is no basis to enjoin the owners of the shares covered by the voting agreements (the "2.9% Shares") from voting now that the voting agreements have been terminated because there is no evidence that Robert Taubman has the power to control the voting of those shares. The Act's restriction on the voting of "control shares" does not survive the termination of the voting agreements, which resulted in the power to vote the 2.9% Shares reverting to the owners of those shares.  As the Indiana Comments explain, "Since the definition of 'control shares' is tied to whether such shares would . . . put an acquiring person over one of the three statutory thresholds

---

[2] Unlike the Indiana statute, the Michigan Act specifically provides that an acquisition made without consideration "does not constitute a control share acquisition."  Mich. Comp. Laws §450.1791(4)(c).

{W0164083.DOC;}                              12

of voting power, *such shares will cease to be 'control shares' in the hands of a subsequent owner* who thereafter obtains them from the acquiring person . . . ." Indiana Comments to Ind. Code 23-1-42-1 (emphasis added); *accord id*. 23-1-42-9. Thus, by reconveying the voting rights back to the owners of the shares, Robert Taubman has given up the right to direct the voting of those shares, and the shareholders are free to vote them as they wish.

Moreover, SPG has not named as party-defendants the signatories to the voting agreements or brought them within the Court's jurisdiction. Persons who are not before the court may not properly by made subject to the court's injunctive power. *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (discussing limitations on a court's power to bind nonparties to an injunction). Any injunction preventing nonparties from voting their own stock as they see fit would deprive those nonparties of the due process of law.

**C.   Lack of Standing**

Finally, the defendants submit that it is improper to grant to SPG any relief under the Act because SPG has no standing to sue under the Act. To sue on a statute, a plaintiff must be within the "zone of interests" that the statute was enacted to protect and have suffered an injury that the statute was designed to prevent. 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.7 at 507 (2d ed. 1984). This is black-letter law. *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 916 (6th Cir. 2000); *see also Detroit Fire Fighters Ass'n v. City of Detroit*, 449 Mich. 629, 645 (1995) (Riley, J., concurring) (noting that this principle was "entrenched" in Michigan law).

The Act was passed for the benefit of the shareholders of Michigan corporations, and nothing in the Act purports to confer standing on, or provide a cause action for, hostile tender

offerors such as SPG. To the contrary, control share acquisition statutes are aimed at *restraining* those in SPG's position. The specific history of the Act indicates that the Legislature believed that the Act would provide a "mechanism that public corporations could use against takeover attempts." House Legislative Anal., H.B. 4907 & 4936 (Mar. 18, 1988); Senate Fiscal Agency Bill Anal., H.B. 4907 (S-1) & 4936 (S-1) (Feb. 18, 1988).

Far from being within the "zone of interests" that the Act was designed to protect, as a hostile tender offeror for control of a Michigan corporation, SPG's interests are *antithetical* to the protected interests. Accordingly, SPG has no standing to enforce the Act.

## V.   THE DEFENDANTS WILL BE IRREPARABLY HARMED IF THE ORDER IS NOT STAYED DURING APPEAL

In this case, SPG has made it very clear in its complaint and arguments that the purpose of enjoining the Taubman family from voting their stock is to enable SPG to effectuate its hostile tender offer. In its opinion, the Court implies that the Taubman family will not be harmed by the preliminary injunction because they "will simply be required to do that which [they are] required under the Michigan Control Share Act to do anyway – appeal to a majority of disinterested shareholders to confer voting rights on those shares," (Am. Op. & Order at 44), but this does not address the harm that the defendants will suffer if they are found to have been wrongfully enjoined. For by that time, the Company will have disappeared: the sale of the Company to SPG, for an inadequate price, and the loss of the Company by its largest shareholders, is indisputably a consequence of the so-called "preliminary" injunction. Preventing the Taubman family, the largest shareholders of the Company, from voting on the life or death of the Company constitutes clear irreparable harm. *See Beztak Co. v. Bank One Columbus, N.A.*, 811 F. Supp. 274, 283-84 (E.D. Mich. 1992) (Edmunds, J.) (blocking shareholders from participating in vote

{W0164083.DOC;}                                      14

on merger is irreparable injury). This is particularly true in the context of a hostile takeover because, again, "[o]nce the company has been taken over, courts can rarely, if ever, 'unscramble the eggs.'" *Homac, Inc. v. DSA Fin. Corp.*, 661 F. Supp. 776, 783 (E.D. Mich. 1987) (Cook, J).

Given SPG's statements to both the Court and to the public of its intent to call a special meeting and consummate its hostile tender offer immediately, the preliminary injunction enjoining the members of the Taubman family and the signatories to the voting agreements from voting their stock - thereby immediately disenfranchising shares representing more than one-third of the voting power of the Company - leaves no issue remaining for appeal. This is because all of the publicly-traded shares of stock of the Company - including those held by the defendants - will be forcibly acquired by SPG before appeal. The damages to the defendants in that instance will be immense, immeasurable, and irreparable.

A stay will also protect against the immediate unjust enrichment of SPG, who would be able to purchase the Company's stock for between $5 and $10 per share less than a possible auction price and the loss of between $5 and $10 per share that will be incurred or suffered by the Taubman family and the other shareholders of the Company. Given the fact that SPG's tender is for all 84 million shares of common stock and interests convertible into common stock, this element of damages alone is between $420 million and $840 million. These amounts do not even take into account the negative tax consequences that will be borne by the shareholders, which could add an additional 20 to 40% to the damages.

In addition to the irreparable injury that the defendants will suffer, there are significant areas of monetary damages that the Company will incur unless the Order is stayed during the pendency of the appeal because the Company will become a "lame duck." These damages are

likely to be immense, but are impossible to quantify with certainty. The largest annual shopping mall leasing convention will next be held between May 18 and 22, 2003, in Las Vegas, Nevada. Every major retailer attends this convention, and the Company's representatives are expected to meet with over 400 retailers during this five-day period. It is estimated that 50% of the Company's leasing activity for any given year is initiated during this annual convention, and the Company could well lose a full year's leasing activity as a result of the injunction and retailer uncertainty as to who will be the owner and, even more important, who will be the manager of the Company's centers. The Company's annual leasing activity yields an annual rent of $90 million. Thus, the damages from the potential loss of 50% of the new leases for the year would be $45 million. Multiplied by the typical term of each new lease (seven years), and then present-valued, the Company could stand to lose $250 million if it attends this all-important leasing convention as a "lame duck" owner and manager because of an injunction without a stay. Needless to say, as direct competitors of the Company, SPG and Westfield America, Inc., a wholly-owned subsidiary of an Australian company, would benefit unfairly from such an advantage as a direct result of the "preliminary" injunction.

The Company is also involved in developments and negotiations for leases and financing at new and existing centers. It is estimated that the damages the Company will incur as a result of uncertainty as to who will own and manage these centers will be approximately $185 million. (*See* Decl. of Lisa A. Payne verifying the accuracy of these same statements of fact made in the defendants' letter-brief to the Court dated May 7, 2003.)

Based on these facts alone, the potential actual and consequential damages to the defendants, and the unjust enrichment to SPG, will be between $855 million and $1.275 billion.

{W0164083.DOC;}                                          16

Notably, the Court has already found that "it would be difficult to estimate, with certainty, the value of Defendants' possible damages. Many of the factors that would affect potential damages, including whether shareholders will accept Simon's tender offer, are uncertain and susceptible to market fluctuations." (Am. Op. & Order at 46.) The only way to avoid these immense, unquantifiable, and irreparable damages is to suspend the "preliminary" injunction under Rule 62(c) during the pendency of the appeal.

## VI.   A STAY OF THE ORDER WILL NOT HARM SPG

In contrast to the devastating harm that the defendants will suffer if the Order is not suspended, SPG would simply incur a modest delay in proceeding with its tender offer while the Court of Appeals reviews the case. There is no evidence that the short delay necessary to allow this appeal to proceed would irreparably harm SPG in any way. *Cf. Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 600 F. Supp. 1326 (E.D. Mich.) (Feikens, C.J.) (short delay of merger is not irreparable injury), *aff'd*, 753 F.2d 1354 (6th Cir. 1985). By way of example, this is not a case where SPG runs the risk of losing financing for the transaction. It has publicly represented to the Securities and Exchange Commission and to the Court that it needs no financing to complete the tender offer. Time is not of the essence here, and SPG has repeatedly stated that it is "in this fight for the long haul."

## VII.   THE PUBLIC INTEREST WILL BENEFIT FROM A STAY OF THE ORDER PENDING APPEAL

Finally, and critically, the public interest requires a stay of the Order during the pendency of the appeal. Hundreds of jobs and a substantial number of the Company's business transactions, concerning both new and existing shopping centers (and involving leasing, construction, financing, and management), will be irreparably affected if SPG consummates its

{W0164083.DOC;}                                          17

tender offer.  The public is also injured because the Board (which has already received advice from its investment bankers that the $20 per share price offered by SPG is inadequate) would be placed in the untenable position of, on the one hand, having to consider seeking alternative purchasers by putting the Company up for auction to obtain the highest and best price for the shares, while on the other hand, being unable to make a definitive deal because of the pending appeal.  In this regard, it is notable that many stock research analysts have concluded that, in such an auction, the price may be as high as $25 to $30 per share.  *See, e.g.*, Banc of America Securities Industry Overview at 1 (Nov. 15, 2002) (attached as Ex. C).

Moreover, the public interest dictates that parties be afforded a meaningful opportunity to appeal decisions of the district courts granting injunctions that they believe have been improvidently granted.  Indeed, litigants in the Federal courts are given an express statutory right to immediately appeal "[i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions . . . ."  28 U.S.C §1292(a)(1).  The failure to suspend the injunction and stay the Order in this case will render moot this statutory right of appeal.

## VIII.  NO BOND OR OTHER SECURITY SHOULD BE REQUIRED BECAUSE THERE WILL BE NO MONETARY OR OTHER HARM TO SPG

Rule 62(c) provides that the court may suspend an injunction during the pendency of the appeal "upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."  In this case, SPG has not prayed for any monetary relief, and, the only harm it will suffer is the minimal delay in proceeding with its tender offer.  There is no evidence that this delay will cause any monetary loss to SPG during the pendency of the appeal.  Moreover, SPG will not incur the loss of any "right":  there is no "right" or entitlement to

{W0164083.DOC;}                        18

acquire a company at a given (inadequate) price.  Accordingly, the defendants submit that no security is required.[3]

<div align="center"><b>Relief Requested</b></div>

Based on the above, the defendants respectfully request the Court to suspend, under Rule 62(c), its interlocutory injunction and stay the Order during the pendency of the defendants' appeal.  In the alternative, the defendants request the Court to stay the Order until the United States Court of Appeals for the Sixth Circuit decides the defendants' motion made to the Court of Appeals for a stay of the Order pending the appeal.

Respectfully submitted,

MIRO WEINER & KRAMER
a professional corporation
Attorneys for Defendants

By: _____
      Joseph Aviv (P 30014)
      Bruce L. Segal (P 36703)
      Matthew F. Leitman (P 48999)
      Suite 100
      38500 Woodward Avenue
      Bloomfield Hills, MI 48303-0908
      Telephone: (248) 258-1207
      Facsimile:  (248) 646-4021

HONIGMAN MILLER SCHWARTZ
  AND COHN, LLP
Attorneys for Defendants
I.W. Winsten (P 30528)
Raymond W. Henney (P 35860)
2290 First National Building
Detroit, Michigan 48226-3583
Telephone: (313) 465-7000

Of counsel

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

---

[3] To the extent that the Court determines that a bond should be posted, the defendants submit that it should be significantly lower than the $10 million bond required to be posted by SPG for the injunction.  This is not a symmetrical situation.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED